**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Richmond Division

| | |
|---|---|
| NYEISHA S. GHEE and LISA Y. CAMPBELL, ADMINISTRATORS OF THE ESTATE OF MARK KAHLIL GHEE, DECEASED, : : : : | |
| Plaintiff, : : | |
| v. : : | Civil Action No. 3:26-cv-159 |
| PINETREE APPARTMENTS, LLC *et al.*, : : | |
| Defendants. : | |

**MEMORANDUM IN SUPPORT OF DEFENDANT PESTNOW'S MOTION TO DISMISS**

COMES NOW the Defendant PestNow of Central Virginia, LLC ("Defendant" or "PestNow"), by and through counsel and hereby submits the following memorandum in support of its motion to dismiss the Plaintiff, Nyeisha S. Ghee and Lisa Y. Campbell, Administrators of the Estate of Mark Kahlil Ghee, Deceased's, Complaint against it pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. In support thereof, Defendant states as follows:

**INTRODUCTION**

This case stems from an apartment fire that occurred on February 20, 2024, at Pinetree Apartments. Plaintiff's claims, however, do not stem from the fire itself but, rather, the sliding glass door in the Decedent's apartment that did not open when his mother, Nyeisha S. Ghee, was trying to get them out of the apartment during the fire. Plaintiff claims that there was water and termite damage around the framing of the door which caused the framing to shift resulting in the door getting stuck. (ECF No. 1-2; Compl. ¶ 104). PestNow's relation to this matter is by way of contract, providing extermination services to Pinetree Apartments. (Compl. ¶ 2). The Complaint

asserts that the Decedent's death in the fire, as a result of not being able to exit through the sliding door was the result, in part, of PestNow's negligence.

Co-Defendants Pinetree Apartments, LLC, Clearfield/Pinetree Apartments, LLC, Beachwold Partners, LP, Beachwold Holdings, LLC, South Oxford Management, LLC, Nadra Yohannes, Ricky McConnell, and Alvin Peebles, removed Plaintiff's Complaint to this Court taking the position that naming PestNow as a defendant was fraudulent joinder. (ECF No. 1). PestNow agrees with the co-defendants position and the arguments submitted in their Notice of Removal. The tell being the fatal flaw with the Complaint's negligence claims against PestNow which is that the claims are not premised on allegations that PestNow failed to act reasonably when performing its contractual duties whereby that failure led to Plaintiff's injuries. Rather, the claim is premised on the allegation that Plaintiff's injuries resulted from the failure to rid Pinetree Apartments of its ongoing termite issues over a 5-year period; a claim rooted in contract. The attempt to utilize Virginia law regarding termiticide to claim negligence *per se* claim is strained and illuminates the fact that the tort claims against PestNow present as nothing more than an afterthought. Consequently, in addition to co-Defendant's fraudulent joinder argument, PestNow further moves for dismissal because of the Complaint's failure to state a claim against it.

## STANDARD OF REVIEW

A motion to dismiss is appropriate when a complaint fails to state a cause of action upon which relief can be granted. Fed R. Civ. P. 12(b)(6). Complaints are dismissed when they fail to assert a legal theory that is recognized by the law or to allege sufficient facts to support a cognizable legal theory. *See Smile Care Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996). All allegations and favorable inferences that can be drawn from those

allegations will be viewed in a light most favorable to the non-moving party. *Albright v. Oliver*, 510 U.S. 266, 267 (1994).

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The United States Supreme Court adopted the plausibility pleading standard in the case of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). "To survive a Motion to Dismiss, a Complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Twombly*, 550 U.S. at 570). The Court will no longer accept that a cause of action for relief to be granted is probable based on bald allegations; the allegations must reach a level that make the cause of action plausible.

"The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a Defendant has acted unlawfully . . . . Where a Complaint pleads facts that are 'merely consistent with' a Defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "[L]abels and conclusions," "a formulaic recitation of the elements of a cause of action," and "naked assertions devoid of further factual enhancement" do not state a claim and are not assumed to be true. *Id.* (internal citations and quotations omitted).

## ARGUMENT

The Complaint's allegations are insufficient to state negligence or negligence *per se* claim against PestNow and must be dismissed. To make out a cause of action for negligence, a plaintiff must identify a legal duty, a breach thereof, and an injury which resulted therefrom. *Talley v. Danek Med., Inc.*, 179 F.3d 154, 157 (4th Cir. 1999); *see Steward ex rel. Steward v. Holland Fam. Props., LLC*, 284 Va. 282, 286 (2012) ("All negligence causes of action are based on allegations

that a person having a duty of care to another person violated that duty of care through actions that were the proximate cause of injury to the other person") (citations omitted). The standard for negligence is one of reasonableness. *Id.* To hold a defendant liable for negligence, a plaintiff must plead a defendant's personal involvement with the alleged wrongdoing. "[T]here is no such thing as negligence in the abstract, or in general, or as sometimes is said, *in vacuo*. Negligence must be in relation to some person." *Quisenberry v. Huntington Ingalls Inc.*, 296 Va. 233, 243 (2018) (quoting *Kent v. Miller*, 167 Va. 422, 425–26 (1937) (which is also quoted by *J.A.M. ex rel. Montgomery v. U.S.*, No. 4:10-CV-18, 2011 WL 1304899, at *8 (E.D. Va. Mar. 11, 2011)). In Virginia, "[a]n action for negligence only lies where there has been a failure to perform some legal duty which the defendant owes to the party injured." *A.H. by next friends C.H. v. Church of God in Christ, Inc.*, 297 Va. 604, 633 (2019) (quoting *Balderson v. Robertson*, 203 Va. 484, 487 (1962) (quoting *Williamson v. Southern Ry.*, 104 Va. 146, 149(1905)). "[T]here is no such thing as negligence in the abstract, or in general, or as sometimes is said, *in vacuo*." *Id.* (quoting *Kent*, 167 Va. at 425-26).

"When the standard of care is set by statute, an act which violates the statute is a *per se* violation of the standard of care." *Steward ex rel. Steward*, 284 Va. at 286 (citing *Schlimmer v. Poverty Hunt Club,* 268 Va. 74, 78–79 (2004). In Virginia

> A cause of action based on such a statutory violation is designated a negligence *per se* cause of action and requires a showing that the tortfeasor had a duty of care to the plaintiff, the standard of care for that duty was set by statute, the tortfeasor engaged in acts that violated the standard of care set out in the statute, the statute was enacted for public health and safety reasons, the plaintiff was a member of the class protected by the statute, the injury was of the sort intended to be covered by the statute, and the violation of the statute was a proximate cause of the injury.

*Id.* (quoting *McGuire v. Hodges,* 273 Va. 199, 206 (2007)).

Here, the negligence and negligence *per se* claims are premised on three alleged duties: "the duty to apply the termiticides according to their label, (2) "the duty to otherwise properly apply the termiticides," and (3) "the duty to assign only personnel who were Certified Applicators to apply the termiticides." (Compl. ¶ 159). The problem, however, is that none of these duties have anything to do with Plaintiff's injury. The Complaint is not alleging that termiticides were used improperly and caused the fire. The Complaint is not alleging that the termiticides were used improperly and caused the framing to shift around the door making it inoperable. No, what the Complaint is alleging is that "[a]s a direct and proximate result of PestNow's disregard of label instructions and Virginia law, <u>termites continued to destroy the areas inside the wall surrounding the sliding glass door</u> in Ms. Ghee's Primary Bedroom, eventually resulting in her injuries and Mark's death." (Compl. ¶ 59) (emphasis added).

Essentially, PestNow has been named a defendant in this 170-paragraph inflammatory complaint accused of negligence for failing to stop an ongoing termite problem at Pinetree Apartments, a contractual duty. The Complaint alleges that (1) under Va. Code § 3.2-3939(B) PestNow was required to apply the termiticides as mandated on their label, Compl. ¶ 153, and (2) under Va. Code § 3.2-3932 the technician who applied termiticide was required to personally be certified as an applicator, Compl. ¶ 49. Neither of these statutes impose a duty on PestNow to eradicate a termite problem for Plaintiff or Pinetree Apartments and PestNow owed no common law duty to eradicate termites for Plaintiff or Pinetree Apartments.

Rather, any such duty to stop termites would have been contractual in nature. "In determining whether a cause of action sounds in tort, contract, or both, 'the source of the duty violated must be ascertained.'" *Tingler v. Graystone Homes, Inc.*, 298 Va. 63, 81, 834 S.E.2d 244,

254–55 (2019) (quoting *MCR Fed., LLC v. JB&A, Inc.*, 294 Va. 446, 458 (2017)). In making this determination, the court's analysis turns to the specific nature of the allegations:

> If the cause of complaint be for an *act of omission or non-feasance* which, without proof of a contract to do what was left undone, would not give rise to any cause of action (*because no duty apart from contract to do what is complained of exists*) then the action is founded upon contract, and not upon tort. If, on the other hand, the relation of the plaintiff and the defendants be such that a duty arises from that relationship, irrespective of the contract, to take due care, and the defendants are negligent, then the action is one of tort.

*Id.* at 81 – 82 (emphasis original) (quoting *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 256 Va. 553, 558 (1998)). Ultimately, "in order to recover in tort, the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract.'" *Id*. (quoting *MCR Fed., LLC*, 294 Va. at 458).

It remains in that performing a contractual duty PestNow owes a general duty of care but, again, there are absolutely no factual allegations that it breached that general duty, and the Complaint explicitly asserts that the ultimate breach was that "termites continued to destroy the areas inside the wall surrounding the sliding glass door." (Compl. ¶ 59). Nothing in this Complaint links an action of PestNow to the destruction of the wood around door. Moreover, there are no factual allegations linking the use of the termiticide to the destruction of the wood around the door. The Complaint is not alleging that termiticide label stated, "do not spray directly on wood it can cause damage" and that PestNow sprayed it directly on the wood around door. In fact, there are no allegations as to what the termiticide label said.

The closest allegation to describing the label is the allegation that the label required "PestNow to drill holes between the abutting slabs when applying the termiticide." (Compl. ¶ 48). There are no allegations, however, that explain how drilling holes has any relation to public safety in order to give the negligence *per se* claim any notion of validity. Further, there are no allegations

explaining how drilling holes has any relation to the wood around door frame. In other words, there are absolutely no allegations that Plaintiff was harmed by termiticide. As a result, Plaintiff is simply not a "consumer[] who allegedly [was] injured as a result of improper use of a pesticide" and, therefore, not within the class of persons that Va. Code § 3.2-3939(B) or § 3.2-3932 was intended to benefit. *See Kaltman v. All Am. Pest Control, Inc.,* 281 Va. 483, 498 (2011).

At this point, the Complaint's allegations are entirely insufficient to state a claim for negligence or negligence *per se*. Nonetheless, out of abundance of caution and for the sake of completeness, PestNow will further address each of the substantive allegations against it which are as follows:

> ¶ 6: "PestNow also contributed to Ms. Ghee's injuries in multiple ways, including by applying termiticide only to the exterior of Building G without inspecting or treating the interior of Unit G8 and Building G's other units, by not applying termiticide at the joints of Building G's abutting concrete slabs, and by allowing its technicians to apply termiticides at the perimeter of Building G even though they were not certified to apply termiticides. In short, PestNow knowingly skirted state law and the standard of care intended to protect the public. PestNow's failures and negligence in termite treatment contributed to the termite damage that affected Unit G8's sliding glass door and caused Ms. Ghee extensive injuries."
>
> ¶ 42. "From at least 2019 until the fire, moisture and wet conditions attracted termites to Pinetree Apartments and the termites damaged the apartments, including Unit G8. Pinetree utilized a third-party exterminator, Defendant PestNow, to eradicate termites using termiticide."

The allegations in Paragraphs 6 and 42 suggest that PestNow had a contractual duty, not with Plaintiff, to eradicate the termite problem. It does not set forth a legal duty to Plaintiff. Moreover, it fails to provide any of PestNow's actions breached its general duty of care to others while carrying out its actions performing termite treatment.

> ¶ 46. "On March 5, 2019, PestNow technicians applied termiticide to the exterior of Building E and the interior of only Unit E3. There is no indication that other units in Building E were inspected to determine if interior treatment was needed."

The allegation in Paragraph 46 has nothing to do with the Decedent's unit and occurred before the Decedent was a resident. It, thus, offers no factual enhancement to support or establish the Complaint's negligence claim.

> ¶ 47. "The termiticide instructions mandated that if the exterior of a building was treated with a termiticide, the interior of the building must be inspected as well. However, PestNow did not inspect the inside of units unless it was already inside the unit for other pest control or if Beachwold Defendants specifically asked it to do so. In almost all instances, the Beachwold Defendants made no such request."

The allegations in Paragraph 47 that the instructions mandated in interior inspection is not a safety instruction. The only plausible reading of the instruction is for the purposes of maximizing the effectiveness of termite removal. This allegation is insufficient to serve as the basis for a per se claim as it is unrelated to public safety. Again, the guidance on the label does not create a legal duty requiring PestNow to inspect the interior. It fails to provide any explanation of how any of PestNow's actions breached its general duty of care to others while carrying out its actions performing termite treatment. Instead, it relies on a failure to stop the termite problem, which is a duty contractual in nature.

> ¶ 48. "Further, each Pinetree Apartment building is built on a main slab with multiple abutting concrete slabs. When PestNow applied termiticide at the exterior of a building in the Pinetree Apartment complex, the termiticide label and the standard of care required PestNow to drill holes between the abutting slabs when applying the termiticide. PestNow did not do this."

The allegations in Paragraph 48 that the instructions mandated drilling holes in the concrete slabs are not safety instructions. The only plausible reading of the instruction is for the purposes of maximizing the effectiveness of termite removal. This allegation is insufficient to serve as the basis for a *per se* claim as it is unrelated to public safety. Again, the guidance on the label does not create a legal duty requiring PestNow to drill holes. It fails to provide any explanation of how any of PestNow's actions breached its general duty of care to others while carrying out its actions

performing termite treatment. Instead, the allegation relies on a failure to stop the termite problem, which is a duty contractual in nature.

> ¶ 49. "Additionally, one or more PestNow's technicians who applied a termiticide at Pinetree Apartments were not Certified Applicators as required by *Virginia Code§* 3.2- 3932. *See* the transcript of the deposition of the corporate representative of PestNow at 32:6-32: 18, stating that PestNow technician Jeff Zalinski was not a Certified Applicator. PestNow's failure to follow the termiticide label instructions continued as it responded to Pinetree's termite infestations through and after the February 20, 2024 fire, as demonstrated below."

The allegation in Paragraph 49 regarding the technician applying the termiticide is conclusory in nature and, ultimately, lacks factual support to show that it has anything to do with the Decedent's unit or how it plausibly caused the Decedent's death. It, thus, offers no factual enhancement to support or establish the Complaint's negligence claim. Instead, the allegation relies on a failure to stop the termite problem, which is a duty contractual in nature.

> ¶ 50. "On March 13, 2019, during an inspection of Building N, a PestNow technician "found live termites on the interior of Unit l and also termite damage to the wall studs of Unit 1. He also found live termites between units 7 & 8." There is no indication that the interiors of any units within Building N were inspected other than Unit N1. PestNow's plan to treat only the exterior building without inspecting the units inside violates the termiticide label instructions."

The allegation in Paragraph 50 has nothing to do with the Decedent's unit and occurred before the Decedent was a resident. It, thus, offers no factual enhancement to support or establish the Complaint's negligence claim.

> ¶ 51. "On March 18, 2019, PestNow conducted a wood-destroying insect inspection of Buildings A-P and clubhouse. Visible live termites were observed on the exterior foundations of Buildings B, C, G, J, K, 0, and P. Building J had active termites under the splash guard on the exterior foundation. PestNow recommended treatment for termites for these structures. The inspection report noted that "some degree of damage, including hidden damage, may be present," and advised the buyer to "contact a qualified structural professional to determine the extent of the damage and the need for repairs if any questions arise" regarding the termite damage. The report also noted that the structures may have been previously treated for wood-destroying insects, evidenced by preexisting drill marks and old termite bait stations found."

The allegation in Paragraph 51 occurred before the Decedent was a resident and makes no allegations as to any conduct by PestNow that could show a legal duty or breach of that duty. It, thus, offers no factual enhancement to support or establish the Complaint's negligence claim.

> ¶ 52. "PestNow technicians treated the exterior perimeter of buildings B, C, G, J, K, O, and P on April 4-5, 2019. PestNow again failed to follow the termiticide label instructions by not inspecting the buildings' interiors when treating their exteriors, and by failing to drill holes in the abutting concrete slabs at the perimeter of each of these buildings."

The allegations in Paragraph 52 that the instructions mandated interior inspections and drilling holes in the concrete slabs are not safety instructions. The only plausible reading of the instruction is for the purposes of maximizing the effectiveness of termite removal. This allegation is insufficient to serve as the basis for a *per se* claim as it is unrelated to public safety. Again, the guidance on the label does not create a legal duty requiring PestNow to inspect or drill holes. It fails to provide any explanation of how any of PestNow's actions breached its general duty of care to others while carrying out its actions performing termite treatment. Instead, the allegation relies on a failure to stop the termite problem, which is a duty contractual in nature.

> ¶ 53. "The following year, on May 6, 2020, a technician performed an exterior termite reinspection of Building G. The invoice notes that "Pinetree staff is aware that if an interior inspection is needed that they are to contact us. The annual inspection for termites is only an exterior inspection."

The allegation in Paragraph 53 occurred before the Decedent was a resident and makes no allegations as to any conduct by PestNow that could show a legal duty or breach of that duty. It, thus, offers no factual enhancement to support or establish the Complaint's negligence claim.

> ¶ 55. "During a home inspection on February 17, 2021, a PestNow technician found "swarmer termites in bathroom tub in Unit F6." He recommended a full-perimeter soil-treatment trench around Building F. He warned, "termites are very likely to swarm again after treatment."10 He then treated the exterior of Building F for termites on February 23, 202 l. There is no indication the other units in Building F were inspected, despite the swarm being discovered in Unit F6's interior."

The allegation in Paragraph 55 has nothing to do with the Decedent's unit and makes no allegations as to any conduct by PestNow that could show a legal duty or breach of that duty. It, thus, offers no factual enhancement to support or establish the Complaint's negligence claim.

> ¶ 56. "On March 8, 2023, Pinetree Property Manager Crystal Spruill informed Yohannes that "Apt C8 is swarming with termites." PestNow invoiced Pinetree for cockroach treatment in select units in multiple buildings throughout the complex. While treating for cockroaches, PestNow also noted there was live termite activity seen only in Unit C8. PestNow then conducted "warranty treatment" for Unit C8 and Building C. There is no indication the other units in Building C were inspected for termites."

The allegation in Paragraph 56 has nothing to do with the Decedent's unit and makes no allegations as to any conduct by PestNow that could show a legal duty or breach of that duty. It, thus, offers no factual enhancement to support or establish the Complaint's negligence claim.

> ¶ 57. "A PestNow technician performed a termite reinspection on September 25, 2023. He found evidence of termites, termite shelter tubes, and termite galleries in the pool house. Two days later, the exposed wood in the pool house interior was treated."

The allegation in Paragraph 57 has nothing to do with the Decedent's unit and makes no allegations as to any conduct by PestNow that could show a legal duty or breach of that duty. It, thus, offers no factual enhancement to support or establish the Complaint's negligence claim.

All of these allegations are red herrings as to the claims of negligence against PestNow. They are insufficient to state negligence or negligence *per se* claim against PestNow because they simply fail to show a legal duty owed by PestNow to the Decedent, a breach of that duty, and that the breach caused the Decedent's death. As a result, this Court must dismiss Plaintiff's negligence claims against PestNow.

## **CONCLUSION**

Based on the foregoing as well as any additional argument presented in reply or at hearing, this Court should dismiss the Complaint against Defendant PestNow of Central Virginia, LLC.

Respectfully Submitted,


_____/s/_____
Alexander Francuzenko, VA Bar #36510
Philip C. Krone, VA Bar #87723
Dunn Craig & Francuzenko, PLLC
3251 Blenheim Blvd., Suite 404
Fairfax, VA 22030
T: (703) 865-7480
F: (703) 434-3510
alex@dunncraig.com
pkrone@dunncraig.com
*Counsel for Defendant PestNow*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of March 2026, I filed the foregoing Memorandum in Support of Defendant's Motion to Dismiss with the Clerk of Court via CM/ECF which notifies all parties electronically:

Charles H Cuthbert, Jr. (VSB No. 14519)
Richard M. Cuthbert (VSB No. 82025)
Cuthbert Law Offices, P.C.
220 North Sycamore Street
Petersburg, VA 23803-3228
T: (804) 733-3100
ccuthbert@cuthbertlaw.com
rcuthbert@cuthbertlaw.com
*Counsel for Plaintiff*

Mark J. Krudys (VSB No. 30718)
Daniel Guinnane Zemel (VSB No. 95073)
The Krudys Law Firm, PLC
Truist Place
919 East Main Street, Suite 2020
Richmond, VA 23219
T: (804) 774-7950
mkrudys@krudys.com
dzemel@krudys.com
*Counsel for Plaintiff*

Joseph P. Moriarty (VSB No. 68465)
Kevin M. Kennedy (VSB No. 75071)
Bryn L. Clegg (VSB No. 96923)
WILLCOX & SAVAGE, P.C.
440 Monticello Avenue, Suite 2200
Norfolk, Virginia 23510-2243
T: (757) 628-5500
jmoriarty@wilsav.com
kkennedy@wilsav.com
bclegg@wilsav.com
*Counsel for Pinetree Apartments, LLC, Clearfield/Pinetree Apartments, LLC, Beachwold Partners, LP, Beachwold Holdings, LLC, South Oxford Management, LLC, Nadra Yohannes, Ricky McConnell, and Alvin Peebles*

_____/s/_____
Alexander Francuzenko, VA Bar #36510
Philip C. Krone, VA Bar #87723
Dunn Craig & Francuzenko, PLLC
3251 Blenheim Blvd., Suite 404
Fairfax, VA 22030
T: (703) 865-7480
F: (703) 434-3510
alex@dunncraig.com
pkrone@dunncraig.com
*Counsel for Defendant PestNow*