IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

NYEISHA S. GHEE and LISA Y. CAMPBELL,
ADMINISTRATORS OF THE ESTATE OF
MARK KAHLIL GHEE, DECEASED,

      Plaintiffs,

v.                              Civil Action No.:  3:26-cv-159-RCY

PINETREE APARTMENTS, LLC,
CLEARFIELD/PINETREE APARTMENTS, LLC
BEACHWOLD PARTNERS, LP,
BEACHWOLD HOLDINGS, LLC,
BEACHWOLD RESIDENTIAL, LLC,
SOUTH OXFORD MANAGEMENT, LLC,
NADRA YOHANNES,
RICKY MCCONNELL,
ALVIN PEEBLES, and
PESTNOW OF CENTRAL VIRGINIA, LLC,

      Defendants.

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR PARTIAL 12(b)(6) MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Pursuant to Local Rule 7 and Rule 12(b)(6) of the Federal Rules for Civil Procedure, the

defendants Pinetree Apartments, LLC, Beachwold Holdings, LLC, Beachwold Residential, LLC,

South Oxford Management, LLC, Nadra Yohannes, Ricky McConnell, and Alvin Peebles

(collectively "Defendants"),[1] by counsel, hereby submits this Memorandum in Support of their

Partial 12(b)(6) Motion to Dismiss Plaintiffs' Complaint.

---

[1] The undersigned have filed a separate motion to dismiss on behalf of Beachwold Partners, LP, and Clearfield/Pinetree Apartments, LLC; however, Beachwold Partners, LP, and Clearfield/Pinetree Apartments, LLC, also join in this Motion.

## I.    INTRODUCTION

This wrongful death case arises from an apartment fire. The Complaint asserts an egress claim, alleging the sliding glass door ("Sliding Door") in the mainbedroom, which was almost completely destroyed in the fire, did not slide open when Ms. Ghee attempted to exit with Mark Ghee ("Mark" or the "Decedent"). Ms. Ghee alleges that when trying to exit the Sliding Door, she placed the Decedent down on the bed and lost track of him, and then she exited the apartment through the front door. The Decedent subsequently died in the fire.

The parties' landlord-tenant relationship is controlled by the operative lease agreement and Virginia common law rule that a tenant assumes all risk for personal injury from defects in the apartment unless there is concealment. To avoid the lease and common law responsibilities placed on tenants, the Complaint asserts that the Sliding Door's operation was impeded because water and termite damage in the header above the Sliding Door had caused the framing to shift, resulting in compression and deformation of the Sliding Door (the "Compression Issue"). Plaintiffs claim that the Compression Issue was concealed from Ms. Ghee because a maintenance person painted the trim on the header above the Sliding Door shortly before Ms. Ghee took possession.

Plaintiffs' fraud and concealment claim is faulty as to nearly every element of the cause of action, and it is not remotely plausible because it is based on a series of unreasonable inferences, assumptions, and flawed logic. At its most basic, a concealment claim is impossible because the Compression Issue could never have been hidden. The defect – the operability of the Sliding Door – is obvious and discoverable with even a cursory inspection, which Ms. Ghee demonstrated by discovering that the Sliding Door was inoperable in July 2023. Further, ongoing water and termite damage could never have been concealed for 21 months in the main bedroom where Ms. Ghee slept (as the paint would have been washed off and/or bubbled up with ongoing damage), and the

2

claim that the paint looked the same in February 2024 as it did in June 2022 is fatal to Plaintiffs' claim. Lastly, Plaintiffs cannot even plausibly plead the Compression Issue existed when Ms. Ghee assumed tenancy because the apartment passed a safety inspection a few days before Ms. Ghee moved in, and the Sliding Door moved smoothly after it had been lubricated. Plaintiffs also pled that Ms. Ghee discovered the Sliding Door was stuck in July 2023, approximately seven months before the fire and thirteen months after the moved in, breaking any causal chain from the alleged concealment.

Plaintiffs' information and records also contradict what Plaintiffs allege they show. The records show that Pinetree maintained the apartment complex by making repairs after receiving notice of issues, including responding to tenant complaints. Plaintiffs want to use repairs in other apartments, mostly repairs not even in the same building as Ms. Ghee's apartment unit, to create multiple trials within this trial. Even if there were issues with the other apartments, and even with other sliding doors, those other issues do not support Plaintiffs' claims about the Sliding Door in Ms. Ghee's apartment. If anything, the factual allegations show the exact opposite. When tenants at Pinetree had issues with the sliding doors that were reported through the complex's maintenance system, the issues were addressed, including by repairing sliding doors where needed.

Plaintiffs also fail to state claims as to most of the defendants because she cannot connect these entities with Ms. Ghee's apartment. Plaintiffs do not allege, nor could they, that alleged upper management was ever aware that Ms. Ghee's unit was painted in May 2022, or that the alleged July 2023 request for repairs to the Sliding Door in Unit G-8 was ever communicated higher than the ground-level maintenance at Pinetree. Without any knowledge about the alleged material fact, there cannot be any fraud claims. Plaintiffs' other claims under the VCPA, for nuisance, and for punitive damages all fail for the same reasons.

## II.    <u>FRAUDULENT JOINDER</u>

Defendants removed this action to this Court on February 27, 2026. *See* (ECF No. 1). In the Notice of Removal, Defendants argued that Plaintiffs have fraudulently joined several non-diverse defendants, including PestNow of Central Virginia, LLC ("PestNow"), Nadra Yohannes ("Yohannes"), Ricky McConnell ("McConnell"), and Alvin Peebles ("Peebles," collectively with Yohannes and McConnell, the "Individuals"). *See id.* Defendants incorporate arguments raised in the Notice of Removal, as such arguments are also properly raised as a Motion to Dismiss. *See id.*

After the improper defendants are dismissed, the only remaining defendants should be Pinetree Apartments, LLC ("Pinetree"); Clearfield/Pinetree Apartments, LLC ("Clearfield"); Beachwold Partners, LP ("Partners"); Beachwold Holdings, LLC ("Holdings"); Beachwold Residential, LLC ("Residential"); and South Oxford Management, LLC ("South Oxford") (collectively the "Affiliated Entities"). Pinetree was the owner of the Pinetree Apartments at the time of the fire. Clearfield is the sole member of Pinetree, and Partners is one of its passive investor groups. *See* (ECF No. 1, at 4). South Oxford was Pinetree's property manager at the time of the fire, pursuant to an executed agreement. *See* No. 3:25-cv-17 (ECF No. 55-11) (confidential). Residential was the asset manager of Pinetree by written agreement until May 2023, when the asset management contract was assigned to Holdings. *See* No. 3:25-cv-17 (ECF No. 55, at 21-22).

### III.    <u>ALLEGATIONS IN PLAINTIFFS' COMPLAINT</u>[2]

Plaintiffs' Complaint arises from an apartment fire that occurred on February 20, 2024. By way of summary,[3] Plaintiffs' Complaint alleges the following facts relevant to this Motion:

1.    PestNow was the third-party exterminator utilized by Pinetree from 2019 until the fire. *See* Compl. ¶ 42. On March 18, 2019, PestNow observed termites on the exterior foundation of Building G. *See* Compl. ¶ 51. On April 4-5, 2019, PestNow treated Building G for termites. *See* Compl. ¶ 52. When spraying the termiticide, PestNow did not inspect Building G's interior or drill holes in the abutting concrete slabs and the perimeter of the building, which was recommended on the termiticide label. *See id.* On May 2020, a PestNow technician inspected the exterior of Building G and did not see termites. *See* Compl. ¶ 53. After May 2020, no PestNow document records the results of any termite inspection and/or treatment to Building G. *See* Compl. ¶¶ 42-59.

2.    Yohannes, as the South Oxford Regional Manager over the Pinetree apartments, was aware of the negative termite inspection conducted on Building G in May 2020. Compl. ¶ 54.

3.    Between 2018 and 2024, some Pinetree tenants reported concerns of moisture, mold, and water leaks around their sliding glass doors. *See* Compl. ¶¶ 36-41. For some of the units experiencing water leaks, it was determined FIX TYPO that the flashing had been installed incorrectly. *See* Compl. ¶ 54. A few of these concerns were reported to Yohannes, and McConnell – a maintenance supervisor – was aware of some issues. *See* Compl. ¶ 119. Pinetree hired third-party contractors to repair the headers above the sliding glass doors that were experiencing water

---

[2] For the purposes of this Motion <u>only</u>, the Court and Defendant take Plaintiff's factual allegations and reasonable inferences as true. *See, e.g.*, *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

[3] This is a high-level summary because Plaintiff's Complaint is lengthy at 51 pages and 164 allegations, and the facts have been briefed for this Court many times, including in the Notice of Removal (ECF No. 1).

intrusion. *See* Compl. ¶¶ 63-89. None of the complaints about water intrusion or third-party contractor repairs pertained to Unit G-8, and the only complaint concerning mold (but no structural concern) in Unit G-8 was in 2021, over a year before Ms. Ghee's tenancy. *See* Compl. ¶ 37.

4.      Sometime in early 2022, Ms. Ghee applied for financial assistance from the Petersburg Redevelopment and Housing Authority ("PRHA") to live at Pinetree apartments. *See* Compl. ¶ 19. On May 24, 2022, the PRHA conducted an initial inspection of Unit G-8. Compl. ¶ 21. During the inspection, the PRHA noted that Sliding Door was difficult to open. *See id.* Several work orders were entered, including a request to fix "chipping paint around window sills and sliding doors." *See* Compl. ¶ 23. Plaintiffs allege "by information and belief" that the chipping paint was caused by termite and/or water damage. *Id.* McConnell painted the Sliding Door header and sent a video to the PRHA to document the work completed.[4] *See* Notice of Removal ("Notice"), Ex. D-E (ECF No. 1-5, 1-6). Additionally, McConnell greased the Sliding Door, which allowed the Sliding Door to move smoothly. The PRHA inspector reported that "Maintenance was able to get to the windows/doors to open smoothly while I was present by lubricating the seals." *See* Notice, Ex. (ECF No. 1-7); *see also* Compl. ¶ 119 (acknowledging the seals were greased, which allowed movement). The PRHA passed Unit G-8 as safe for Ms. Ghee's tenancy. *See* 24 C.F.R. § 5.703(a).

5.      Effective June 1, 2022, Ms. Ghee rented Apartment G-8 from Pinetree. Compl. ¶ 33. That same day, she received a walk-through tour of Unit G-8, during which she was not informed of any issues with the Sliding Door. Compl. ¶ 27. Ms. Ghee signed an inventory and condition form in her lease that instructed her to test for safety items and gave her a place to list

---

[4] The Court can consider "documents attached to. . . the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006)).

damage to the apartment, and she did not list any. *See* Notice, Ex. G (ECF No. 1-8).

6.      Ms. Ghee alleges she never tested the Sliding Door until July 2023, when she found it could not move. *See* Compl. ¶ 28. Later in July 2023, Ms. Ghee orally reported the problem with the Sliding Door to a maintenance person walking near her apartment, who replied "I got you" or words to that effect. Compl. ¶ 29. Ms. Ghee never saw maintenance fix her Sliding Door, never asked Pinetree whether the Sliding Door had actually been repaired, and never tested the Sliding Door again prior to the fire. *See id. generally.* Ms. Ghee also never reported observing bugs or termites during her tenancy to the Pinetree office personnel. *See id. generally.*

7.      During the fire on February 20, 2024, Ms. Ghee alleges that she attempted to open the Sliding Door but was unable to do so. Compl. ¶¶ 99-100.

8.      Ms. Ghee's son, Mark Khalil Ghee ("Mark" or the "Decedent"), died in the fire. Compl. ¶ 108.

9.      A photograph taken approximately two months after the fire shows deteriorated wood behind the sheetrock of the bedroom's back wall. *See* Compl. ¶ 3. The Sliding Door itself was mostly destroyed in the fire.[5]

## IV.     RULE 12 MOTION TO DISMISS STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) "challenges the legal sufficiency of a complaint[.]" *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). The "complaint must

---

[5] There were several joint, post-fire inspections involving Plaintiffs' counsel and experts. All of Plaintiffs' requests to preserve items from the apartment were honored. Specifically, Plaintiffs requested that the damaged Sliding Door and the sliding door from the other bedroom be preserved as part of the joint post-fire inspections. However, Plaintiffs, through their counsel and experts, never requested to preserve the wood framing surrounding the Sliding Door. Plaintiffs first disclosed the alleged theory on the wooden framing surrounding the door when filing Ms. Ghee's original Complaint in December 2024, well after the parties agreed to disposing of the damaged parts of the apartment that were not requested to be preserved during the multiple post-fire inspections.

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis*, 588 F.3d at 193 (quoting *Iqbal*, 558 U.S. at 678). Rather, a plaintiff must "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, *i.e.*, the plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 556 U.S. at 557) (cleaned up).

While the Court must presume all "factual allegations in the complaint to be true and accord[] all reasonable inferences to the non-moving party," the Court is not bound to accept as true "conclusory allegations regarding the legal effect of the facts alleged." *Westmoreland v. Brown*, 883 F. Supp. 67, 70 (E.D. Va. 1995) (quoting *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995)). Indeed, the "presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support a finding of [liability]." *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001). Thus, the plausibility standard "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

Additionally, the Court will consider not just the allegations in the Complaint, but any "documents that are explicitly incorporated into the complaint by reference, and those attached to the complaint as exhibits." *Goines v. Valley Cmty. Services Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (first citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); and then citing Fed. R. Civ. P. 10(c)); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." *Lawhon*

8

*v. Edwards*, 477 F. Supp. 3d 428, 436 (E.D. Va. 2020) (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016)).

<h2 style="text-align:center">V.    <u>LEGAL ARGUMENT</u></h2>

**A.    The Court Should Dismiss Count I & II: Common Law Fraud Claims and Concealment of a Latent Defect.**

    i.    <u>Plaintiffs Cannot State a Claim for Fraud as to the Repair Work in May 2022.</u>

Plaintiffs' claim against Defendants is that in May 2022, a maintenance-level employee committed fraud with a paintbrush. There are no allegations *that any other person* besides that employee ever saw the header above the Sliding Door, including Yohannes as the South Oxford Regional Manager, let alone either Residential or Holdings as the asset manager. Plaintiffs' entire fraud claim depends on the allegation that McConnell, by himself, knowingly painted over water and termite damage with the intent of concealing an inoperable Sliding Door from Ms. Ghee. Not only can Plaintiffs not make the claim against McConnell individually because, at most, this is a claim for non-feasance, *see* (ECF No. 1, 18-23), but McConnell's alleged actions are not fraudulent when applied to Pinetree as the owner of the complex or to other named defendants. Defendants incorporate the significant prior briefing that has occurred on this, both in this case, *see* (ECF No. 1), and in Ms. Ghee's Pending Federal Action, *see* No. 3:25-cv-17 (ECF Nos. 6, 27, 49, 55).

Defendants cannot be charged with fraud because the defect is not plausibly alleged as existing when Ms. Ghee took possession. Plaintiffs are extremely clear that the defect is the Compression Issue: "namely, water damage and termites that were causing the wooden framing behind the drywall to deteriorate and deflect, thereby interfering with the operation of the sliding glass door." *See, e.g.*, Compl. ¶ 131. The Compression Issue requires (1) that there was both water and termite damage; (2) that resulting damage placed pressure on the Sliding Door's frame; (3) that the pressure caused the Sliding Door's frame to compress and shift out of square; and (4) that

9

the Sliding Door would not open because of the compression. Plaintiffs have even provided an expert diagram detailing the specific causal chain. *See id.* ¶ 104. However, the Compression Issue did not exist before Ms. Ghee took possession because the Petersburg Redevelopment and Housing Authority ("PRHA") inspector who passed Unit G-8 reported that "Maintenance was able to get to the windows/doors to open smoothly while I was present by lubricating the seals." *See* Notice, Ex. F (ECF No. 1-7; *see also* Compl. ¶ 21, 119. Even if lubricating the Sliding Door's seals was a temporary repair, as Plaintiffs want to characterize, it was a repair that <u>fixed the issue</u>. Property owners are not required to provide an egress point that will never need maintenance. Nor would it be reasonable for a maintenance person to believe additional repair was necessary when the PRHA inspector had passed the apartment.

Equally detrimental to Plaintiffs' fraud claim is the fact that the Compression Issue, if it occurred, would be impossible to conceal. Fraudulent concealment requires "conceal[ment of] the material fact while knowing that plaintiff was acting on the assumption that the fact did not exist." *Guy v. Tidewater Inv. Props.*, 41 Va. Cir. 218, 220-221 (Norfolk 1996); *see also Cohn v. Knowledge Connections, Inc.*, 266 Va. 362, 368 (2003); *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 827 (4th Cir. 1999). No concealment can occur when Ms. Ghee could have discovered – and indeed, did discover – the alleged Compression Issue by simply attempting to open the Sliding Door. *See* Compl. ¶ 28. A layer of paint on a door's header, no matter how thickly applied, cannot conceal whether a door functions. Nothing Pinetree could have done would have concealed an inoperable Sliding Door in the main bedroom where Ms. Ghee slept for 14 months before the fire. As such, a fraudulent concealment claim is not possible.

Plaintiffs want to claim that Ms. Ghee could not have discovered the defect without understanding the "flashing problem, moisture issues, termite infestation, and/or wood rot" that

allegedly caused the Compression Issue. *See* No. 3:25-cv-17 (ECF No. 56, at 9). Plaintiffs do not cite any authority for the assertion that claimants need to understand the entire scientific causal chain to be charged with notice of the defect when claimants are otherwise on notice of the *actual visible effect* of the defect. Nor does such an argument align with common sense. Notice only requires that the claimant "has reason to know that [the defect] exists." *See, e.g.*, Va. Code § 8.1A-202(1)(a). Ms. Ghee had reason to know the Compression Issue existed in July 2023 because the door did not open.[6] *See* Compl. ¶ 28. Further, the defect only arose when the Compression Issue occurred – e.g., when the door became inoperable. The exact moment that the door allegedly became inoperable was the moment the defect came into being, and any pre-existing water and termite damage was not defective until the door's operation was impeded. Again, it is the *operation of the door* that is the claimed defect, and it only takes a cursory inspection to see if a door opens. The Supreme Court of Virginia has disclaimed liability for even affirmative misrepresentations when the defect can be discovered by a cursory inspection. *See Kuczmanski v. Gill*, 225 Va. 367, 370 (1982). That should end the inquiry.

ii.    Plaintiffs Cannot State a Claim for Fraud Against Alleged Upper Management.

No one other than ground-level maintenance ever knew about Unit G-8, so a fraud claim against any the Defendants should be a non-starter. A defendant must know about the "material fact" to have intentionally concealed it. *See Cohn v. Knowledge Connections, Inc.*, 266 Va. 362, 368 (2003). Plaintiffs try to skirt this obvious bar by claiming that the Defendants were on notice of general water intrusion issues with other apartments and exerted downward pressure on

---

[6] Plaintiffs attempt to plead around this issue by claiming that Ms. Ghee "did not know whether it was a temporary or permanent issue, or whether a more aggressive effort would move the door." Compl. ¶ 28. This pleading does nothing to change the fact that when Ms. Ghee tried to open the door, she could not. That is notice. Further, Ms. Ghee knew it was significant enough because she allegedly asked Mr. Norris to repair it. *See* Compl. ¶ 29.

employees to avoid performing necessary repairs. However, fraud must be based on intentional and knowing conduct, not on negligence or constructive notice. The very idea of applying constructive notice to a fraud claim is a legal conundrum, because fraud requires knowledge, *see id.*, and constructive knowledge operates when the defendant lacks knowledge of the alleged hazard, *see, e.g.*, *Winn-Dixie Stores, Inc. v. Parker*, 240 Va. 180, 183 (1990). This legal issue has been repeatedly briefed by Defendants in this case, *see* Notice (ECF No. 1, 18-28), and in Ms. Ghee's Pending Federal Action, *see* No. 3:25-cv-17 (ECF Nos. 6, 27, 49, 55).

As a preliminary matter, the allegations in the Complaint do not plausibly support that necessary repairs for other apartments were avoided. All Plaintiffs' allegations pertain to apartments <u>where repairs were made</u>. For example, Plaintiffs lean heavily on one asset manager's comment about avoiding unnecessary costs, but the manager in that same sentence directed repairs be completed. *See* Compl. ¶¶ 91 n.10. Plaintiffs criticize another asset manager for negotiating with a subcontractor, but the subcontractor agreed to the price and performed the repairs. *See* Compl. ¶ 91 n.12. Plaintiffs also devote 25 paragraphs of the Complaint to third-party contractor work that Pinetree paid to have completed at the property. *See* Compl. ¶¶ 63-88. Plaintiffs have not identified any safety-related complaints for which repairs were <u>not</u> performed because of an explicit decision by the Affiliated Entities to restrict funds.[7] Further, while Plaintiffs allege that Yohannes testified "that Beachwold Defendants limited costly repairs at Pinetree Apartments,"

---

[7] The only allegation that Defendants can even conceive of Plaintiffs referencing on this point is the 2019 termite treatment (before Ms. Ghee's tenancy), referenced in Paragraph No. 94 of the Complaint, which is an intentional misreading of the facts. Plaintiffs allege that PestNow recommended treating all the buildings as a preventative measure, but Plaintiffs omit the fact when PestNow issued this general letter, PestNow had not yet inspected any other buildings for termites. After this full-site termite inspection occurred, PestNow provided a *second* recommendation about which specific buildings actually needed treatment. Every building that was recommended by PestNow to be treated was then treated.

Compl. ¶ 91 n.12, the deposition transcript is equally available to all parties, and Yohannes's transcript does not support that Yohannes was feeling pressured to restrict necessary repair funds. When Plaintiffs' inflammatory language is removed, the facts presented in the Complaint show employees successfully addressing reported repair issues.

Further, despite Plaintiffs' averments to the contrary, Plaintiffs have not plausibly alleged that the repaired apartments were substantially similar to Ms. Ghee's apartment. *See* Notice (ECF No. 1, 26-27) (substantially similar argument). In the 164-allegation Complaint, Plaintiffs fail to identify any apartments that experienced water intrusion issues **and** reported a correlated difficulty with opening the sliding door – e.g., the Compression Issue. As bears repeating, water intrusion issues in other apartments *are not enough* to make Plaintiffs' alleged defect substantially similar. Plaintiffs must show the Compression Issue occurred. Further, in those small subsets of apartments that experienced water issues, the water "was pouring in from the outside when it rains."[8] *See* Compl. ¶ 38(c). When this occurred, taping was ineffective at keeping water out – evidence that **a layer of paint never would have either**. *See id.* If Ms. Ghee's unit was experiencing similar issues, it would not have taken long for the water to wash away the paint or termites to cause new bubbling in the paint. Plaintiffs' allegations that the paint looked the same in February 2024 as it did in May 2022 when freshly applied is fatal to any claims of substantial similarity.

Further, Plaintiffs do not plausibly allege that anyone (not McConnell, not Yohannes, not anyone at the Affiliated Entities) knew that the Compression Issue was possible, which Defendants dispute. *See* Notice (ECF No. 1, 27-28). For fraud beyond simple negligence, Plaintiffs must allege more than just that the Compression Issue was a possible defect that could theoretically occur, but

---

[8] The tenant in K-1 – the unit referenced in Paragraph 38(c), which was repaired in 2020 before Ms. Ghee's tenancy – never complained that the sliding door could not open from water damage.

that the defendants <u>knew</u> the "material fact" that the Compression Issue could occur. Ignorance of a potential defect is not fraud. *See, e.g.*, *C. W. Denning & Co. v. Suncrest Lumber Co.*, 51 F.2d 945, 948 (4th Cir. 1941) (finding fraud cannot exist without intent to deceive "for it is emphatically the action of the mind that gives it existence… The action for fraud and deceit rests in the intention with which the representation is made, <u>and not upon the representations alone</u>." (quoting citations omitted) (emphasis added)); *United States v. Mackie*, No. 1205, 1954 U.S. Dist. LEXIS 4788, \*37 (M.D.N.C. 1954) ("Evidence of inefficiency and ignorance … are not sufficient to establish fraud."). Plaintiffs have only alleged that Defendants were aware of some water intrusion and/or issues in a subset of other units, which were repaired, without any reference at all to the Compression Issue. *See supra.* Nothing in the Complaint could plausibly support an allegation that Defendants knew the Compression Issue was possible, and thus Plaintiffs have failed to state a claim for fraud or concealment.

**B.**     **As to All Defendants Except Pinetree Apartments, LLC, and Possibly South Oxford Management, the Court Should Dismiss Count III: Failure to Maintain the Back Wall of the Primary Bedroom.**

Plaintiffs cannot state a claim against the Affiliated Entities and Yohannes, as an individual,[9] for failure to maintain Unit G-8 because Plaintiffs cannot identify a common-law duty that they owed. The only duty referenced in the Complaint on this Count is to "exercise ordinary care and diligence to maintain the inside of the back wall of the Primary Bedroom in a reasonably safe condition." Compl. ¶ 139. This theory relies on the presumption that the defect is within the Defendants' control. *See Isbell v. Commercial Inv. Assocs.*, 273 Va. 605, 611 (2007)

---

[9] Notably, Plaintiffs are incorrect that Yohannes *as an individual* owes a tort duty to tenants. To support this allegation, Plaintiffs cite *Milburn v. J.C. Penny Props.*, but this case discussed the duty owed by the <u>management company</u>, not an employee. No. CL-2006-7068, 2007 Va. Cir. LEXIS 42, at \*3-4 (Fairfax 2007). That case confirmed that individuals only owe duties for malfeasance, not nonfeasance. *See id.* at \*4.

(distinguishing between areas that are under landlord versus tenant control). But the only entities that might feasibly owe such a legal duty under Virginia law would be the property owner and *maybe*, to a lesser extent, to a property manager that has contractually assumed certain duties to maintain areas within the landlord's exclusive control. *See Milburn v. J.C. Penny Props.*, No. CL-2006-7068, 2007 Va. Cir. LEXIS 42, at *3-4 (Fairfax 2007) (noting that the Virginia Supreme Court has not determined the scope of a property manager's duties to invitees). While Plaintiffs blithely state that the Affiliated Entities should be "held liable for their own torts," Compl. ¶ 121, Plaintiffs fail to plead any source from which a duty would be imposed on the Affiliated Entities – and without a duty sourced from the common law, there is no tort. *See, e.g.*, *Tingler v. Graystone Homes, Inc.*, 298 Va. 63, 81 (2019). The Affiliated Entities are only named because of Plaintiffs' alleged veil-piercing theories, which are not ripe, and cannot independently sustain a claim. *See Bennett v. Garner*, 913 F.3d 436 (4th Cir. 2019). Again, this issue has been addressed in Ms. Ghee's Pending Federal Action. *See* No. 3:25-cv-17 (ECF No. 55, at 21-26).

The Complaint does not connect any Affiliated Entity to Unit G-8. Plaintiffs merely allege an organizational "top-to-bottom knowledge" about construction work on other apartments, relying on cherry-picked emails in which the asset manager was notified about costly repairs that Pinetree needed to perform (and did) at the complex. *See supra*. But no one above McConnell, on-the-ground maintenance, is alleged to have knowledge about Unit G-8. The discussions with the Affiliated Entities never concerned Unit G-8. There is thus no basis in the common law for extending any duty to Plaintiffs beyond Pinetree, as the owner, and *maybe*, to a lesser extent, to South Oxford as the property manager. There is certainly no common law basis for a claim against the Affiliated Entities and Yohannes.

**C.    The Court Should Dismiss Count IV: Claims Under the Virginia Consumer Protection Act.**

The VCPA, Section 59.1-200(14), is not applicable to Plaintiffs' claims in the lawsuit because the VCPA by its terms states that the Act does not apply to landlord-tenant relationships without a showing of "misrepresentation or fraudulent act or practice under § 59.1-200." Va. Code Ann. § 59.1-199. Section 200 is narrow, and Section 200(14), upon which Plaintiffs attempt to rely, is even more narrow, allowing recovery only when a supplier in connection with a consumer transaction uses "deception, fraud, false pretense, false promise, or misrepresentation[.]" Va. Code Ann. § 59.1-200. Even assuming that Pinetree is a "supplier" of goods and services under the VCPA, Plaintiffs cannot show misrepresentation in connection with a consumer transaction.

Plaintiffs fail to define what the alleged "consumer transaction" is, but for the sake of argument, Defendants assume Plaintiffs mean the lease of an allegedly "safe apartment" that Ms. Ghee later learned was not safe. *See* Compl. ¶ 146. This is not the type of consumer transaction contemplated under the VCPA, which specifically exempted from coverage the lease of apartments generally covered by the Virginia Residential Landlord Tenant Act ("VRLTA"). *See* Va. Code Ann. § 59.1-199. If the Court were to consider every leasing of an apartment to be a potential misrepresentation whenever the traditional rule of *caveat emptor* controls, then the exemption for the VRLTA would have no meaning at all. A canon of statutory construction is that all words must have meaning (and generally their plain meaning) without absurd result. *Cf. Lawlor v. Commonwealth*, 285 Va. 187, 237 (2013) ("[T]he plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction, and a statute should never be construed in a way that leads to absurd results." (quotation omitted); *United States v. Goldenberg*, 168 U.S. 95, 102 (1897) (emphasizing importance of "obvious and natural import of the language, giving to it the ordinary grammatical construction"). The Court should not consider an alleged generic misrepresentation (and a silent one) that an apartment was "safe" as triggering the VCPA.

Plaintiffs have not pled any facts supporting a reasonable inference that Defendants acted with specific intent to defraud Ms. Ghee. "[U]nlike fraud for affirmative misrepresentations, concealment requires a showing of intent to conceal a material fact; reckless nondisclosure is not actionable." *Western Capital Partners, LLC v. Allegiance Title & Escrow, Inc.*, 520 F. Supp. 2d 777, 782 (E.D. Va. 2007) (quoting *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 827 (4th Cir. 1999)). If the Court were to overlook each of these reasons that Plaintiffs failed to state a VCPA claim, the VCPA claim would fail for all the reasons that Plaintiff fails to state fraud and concealment claims.

**D.    The Court Should Dismiss Count VI: Private Nuisance.**

Nuisance law is not designed to remedy a tenant for defects in a rented property. A private nuisance claim arises when a property owner uses their property in a way that substantially interferes with another's use and enjoyment of their property (e.g., neighboring properties). *See Virginian R. Co. v. London*, 114 Va. 334, 334-35 (1912). Plaintiffs' claim differs because it is all the same property: Unit G-8, for which control passed from Pinetree to Ms. Ghee at the inception of the lease. *See Fancher v. Fagella*, 247 Va. 549, 555 (2007) (applying its rule only to "a neighbor's property," not to an alleged nuisance all occurring on the same property). As the Supreme Court of Virginia has noted, defendant landlords are not liable to plaintiff tenants, the invitees, under nuisance theories. *See Oliver v. Cashin*, 192 Va. 540, 546 (1951) ("[A] landowner is not liable to a person on the demised premises in the right of the tenant for injuries caused by a defective condition of the demised premises on the theory that the condition is a ruinous condition or a nuisance."). Further, Plaintiffs allege that the wrongful actions occurred *before* Ms. Ghee's tenancy, and thus there is a synchronicity issue. A landlord is not liable for an "open and obvious condition existing at the inception of the tenancy, and of which the tenant knew or had means of knowing equal to the landlord." *John Aragona Enters., Inc. v. Miller*, 213 Va. 298, 300 (1972).

There is also a causation problem with nuisance in this context. Private nuisance theory relies upon active negligence by the defendant in <u>creating</u> the nuisance condition.[10] *See Cline v. Dunlora South, LLC*, 284 Va. 102, 109 (2012) (noting that there was nothing to suggest the property owner "engaged in any affirmative act that caused the property . . . to be different than in its natural state"). Plaintiff alleges that the damage was created by termites and water, which are naturally occurring degenerative agents. Private nuisance theory does not require the property owner to interfere with nature to prevent the development of a dangerous condition on their property. *See id.* (finding that a private landowner has no duty to traveling motorists to cut down decaying trees adjoining a public highway); *see also Carmello v. Cockerill*, No. 1818-22-4, 2024 Va. App. LEXIS 411, *8 (July 16, 2024) ("Mere failure to inspect or maintain … is not enough" and noting that "law punishes misfeasance, not nonfeasance.").

Further, any claim for private nuisance would be subsumed in Plaintiffs' prior claim for negligence. "When a complaint pleads both negligence and nuisance as a basis for liability, but the nuisance allegedly was the result of negligent conduct, we look to the object of the action, rather than its form, to determine the extent of liability. . . . Where the acts or omissions constituting negligence are the identical acts which it is asserted give rise to a cause of action for nuisance, the rules applicable to negligence will be applied." *Harless v. Williams*, 84 Va. App. 242 (2025)

---

[10] Plaintiffs attempt to argue that Defendants allegedly created the condition by improperly installing flashing. *See* No. 3:250-cv-147 (ECF No. 56, at 21). This is a Hail Mary argument that does not match the facts, or even Plaintiffs' allegations. It is undisputed that Pinetree Apartments, LLC, did not purchase the property until 2011, and Building G was constructed in 1995. There is no evidence (or even allegation) that Pinetree installed the original flashing. Nor is there any evidence that Ms. Ghee's unit had improperly installed flashing because the wooden header above the door was not preserved (because Plaintiffs' counsel failed to request its preservation when all of Plaintiffs' pre-litigation preservation requests were honored); the Sliding Door was mostly destroyed in the fire; and Plaintiffs' own expert photographs do not show the post-fire condition of the flashing.

(quoting citations omitted). Plaintiffs cannot recover damages by simply relabeling a negligence claim as a nuisance claim. *See Robinson v. Johnson*, 48 Va. Cir. 66, 72 (Richmond 1999). Thus, Defendants incorporate all arguments raised above in Count III, *see supra* Section B, as Plaintiffs cannot state a negligence claim without an alleged duty.

**E.    The Court Should Dismiss Plaintiffs' Punitive Damages Claim.**

The claim for punitive damages based on alleged willful and wanton conduct should be dismissed because the Complaint does not plead facts sufficient to show Plaintiffs' entitlement to same. Plaintiffs' allegations do not demonstrate a conscious disregard for the rights of others. *See also* 1 Va. J.I. – Civil No. 9.080 (reciting standard for punitive damages as including "actual malice . . . [or] willful and wanton disregard of the plaintiff's rights"). The Supreme Court of Virginia has consistently barred claims seeking to transform simple negligence actions by attaching "willful and wanton" labels to their allegations, and it has enforced a high bar for permitting enhanced negligence claims to proceed.[11] Because the actions alleged in the Complaint do not amount to willful and wanton conduct, and because punitive damages are disfavored, Plaintiffs' punitive damages claim and associated claims for willful and wanton conduct should be dismissed.

The alleged conduct does not rise to the level of willful and wanton negligence, which "is defined as acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing

---

[11] The Supreme Court of Virginia struck a claim for willful and wanton negligence when a plaintiff alleged the defendant driver was drunk, speeding, took no evasive action to avoid impact, and attempted to leave the scene of the accident. *Puent v. Dickens*, 245 Va. 217, 218-19 (1993). In contrast, cases where willful and wanton allegations are permitted involve actual notice to the defendant of the dangerous nature of their actions. For example, a defendant's conduct was willful and wanton when a drunk driver had been involved in a prior collision, continued to drive, and caused a second accident while speeding and driving in the wrong lane. *Huffman v. Love*, 245 Va. 311, 313 (1993).

circumstances and conditions, that his conduct probably would cause injury to another." *Cowan v. Hospice Support Care, Inc.*, 268 Va. 482, 487 (Va. 2004) (quoting *Etherton v. Doe*, 268 Va. 209, 213-14 (Va. 2004)) (cleaned up). Although ill will is not necessarily an element, the plaintiff must still show that the defendant "intends his act[.]" *Curtis v. Highfill*, 298 Va. 499, 506 (2020) (quoting *Infant C.*, 239 Va. at 582). Ordinarily, the award of punitive damages is reserved for only the "most egregious conduct." Virginia courts disfavor awarding punitive damages because such damages are meant to act as a penalty; rather, punitive damages are only awarded under Virginia common law involving "egregious conduct." *A.H. v. Church of God in Christ, Inc.*, 297 Va. 604, 637 (2019) (quoting *Bowers v. Westvaco Corp.*, 244 Va. 139, 150 (1992)); *see also id.* at 668 ("[A]n award of punitive damages is not favored generally[.]"); *see also Phillip Morris Incorporated v. Emerson*, 235 Va. 380, 407 (1988).

While the Complaint attaches the terms "willful and wanton conduct," in rote fashion, to the factual allegations, this Court should disregard the terms assigned by the Plaintiffs and consider instead the substance of the Complaint. Plaintiffs' requested inferences of intentional concealment are not reasonable. *See supra.* Even if permitted, these actions still do not support punitive damages. The Fourth Circuit has held that Virginia law precludes punitive damages "when a defendant has shown some care for the safety of others." *Dudley v. Bungee Int'l Mfg. Corp.*, No. 95-1204, 1996 U.S. App. LEXIS 1267 at *9 (4th Cir. 1996) (citing *Philip Morris, Inc.*, 235 Va. at 409). The repairs were made when Pinetree attempted to rectify other perceived safety hazards, including chipping paint and a locking door. Further, there are no allegations that any Defendants' actions separately enhanced the danger posed, such as by causing the fire, and the repairs did not cause the underlying defect. The other apartment units cited by Plaintiffs are not substantially similar to Unit G-8, and it cannot plausibly be alleged that any of the Defendants knew the alleged

Compression Issue was possible, if it actually is. *See supra.* Thus, even if alleged termite damage was concealed, which is disputed, the facts do not support that the concealment was done with reckless disregard for safety warranting punitive damages.

When considered without Plaintiffs' inflammatory language and unreasonable inferences, the Complaint's allegations only amount to a claim of failure to adequately address the problem. Claims that landlords were negligent in maintaining equipment or did not hire competent staff are not sufficient for punitive damages. *See Emerald Point, LLC v. Hawkins*, 294 Va. 544, 551 (Va. 2017) (discussing lower court's determination that tenants had "failed to establish the requisite level of negligence for punitive damages" when claims were "based on an assertion that the landlord had been willful and wanton in failing to maintain the furnace and in failing to employ competent staff") (remanding on other grounds); *Cadd v. Bowman Assocs.*, *LLC*, 105 Va. Cir. 144, 145-146 (Roanoke 2020) (sustaining landlord's demurrer to punitive damages when the plaintiff claimed the landlord breached its duty to upkeep the common areas, including the septic system). Punitive damages require "conscious disregard" of the risk. *Cowan*, 268 Va. at 487. Nothing in the Complaint plausibly pleads that any of the Defendants consciously disregarded a risk in Unit G-8. This Court should follow the Supreme Court of Virginia and refuse to allow Plaintiffs' punitive damages claim to continue.

## VI.  CONCLUSION

For the foregoing reasons, and any reasons stated at any hearing on this matter, the defendants Pinetree Apartments, LLC, Beachwold Holdings, LLC, Beachwold Residential, LLC, South Oxford Management, LLC, Nadra Yohannes, Ricky McConnell, and Alvin Peebles, by counsel, respectfully request this Court partially dismiss Plaintiffs' Complaint with prejudice, and order such other and further relief as the Court may deem appropriate.

I-3033446.1

**PINETREE APARTMENTS, LLC, CLEARFIELD/PINETREE APARTMENTS, LLC, BEACHWOLD HOLDINGS, LLC, BEACHWOLD RESIDENTIAL, LLC, SOUTH OXFORD MANAGEMENT, LLC, NADRA YOHANNES, RICKY MCCONNELL, and ALVIN PEEBLES**

By:    */s/ Joseph P. Moriarty*

     Joseph P. Moriarty (VSB No. 68465)
     Kevin M. Kennedy (VSB No. 75071)
     Bryn L. Clegg (VSB No. 96923)
     WILLCOX & SAVAGE, P.C.
     440 Monticello Avenue, Suite 2200
     Norfolk, Virginia 23510-2243
     Telephone: (757) 628-5500
     jmoriarty@wilsav.com
     kkennedy@wilsav.com
     bclegg@wilsav.com
     *Counsel for Pinetree Apartments, LLC, Beachwold Holdings, LLC, Beachwold Residential, LLC, South Oxford Management, LLC, Nadra Yohannes, Ricky McConnell, and Alvin Peebles*

I-3033446.1

## CERTIFICATION

I hereby certify that on this 6th day of March, 2026, I electronically filed the forgoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Charles H Cuthbert, Jr. (VSB No. 14519)
Richard M. Cuthbert (VSB No. 82025)
Cuthbert Law Offices, P.C.
220 North Sycamore Street
Petersburg, VA 23803-3228
Telephone:  804-733-3100
ccuthbert@cuthbertlaw.com
rcuthbert@cuthbertlaw.com
*Counsel for Plaintiff*

Mark J. Krudys (VSB No. 30718)
Daniel Guinnane Zemel (VSB No. 95073)
The Krudys Law Firm, PLC
Truist Place
919 East Main Street, Suite 2020
Richmond, VA 23219
Telephone:  804-774-7950
mkrudys@krudys.com
dzemel@krudys.com
*Counsel for Plaintiff*

Alexander Francuzenko (VSB No. 36510)
Philip C. Krone (VSB No. 87723)
Dunn Craig Francuzenko
3251 Blenheim Blvd., Suite 404
Fairfax, VA 22030
Telephone: 703-856-7480
alex@dunncraig.com
pkrone@dunncraig.com
*Counsel for PestNow of Central Virginia, LLC*

*/s/ Joseph P. Moriarty*
Joseph P. Moriarty (VSB No. 68465)
Kevin M. Kennedy (VSB No. 75071)
Bryn L. Clegg (VSB No. 96923)
WILLCOX & SAVAGE, P.C.
440 Monticello Avenue, Suite 2200
Norfolk, Virginia 23510-2243
Telephone: (757) 628-5500
jmoriarty@wilsav.com

I-3033446.1

kkennedy@wilsav.com
bclegg@wilsav.com
*Counsel for Pinetree Apartments, LLC, Beachwold Holdings, LLC, Beachwold Residential, LLC, South Oxford Management, LLC, Nadra Yohannes, Ricky McConnell, and Alvin Peebles*

24