IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

NYEISHA S. GHEE and LISA Y. CAMPBELL,
ADMINISTRATORS OF THE ESATE OF
MARK KAHLIL GHEE, DECEASED,

     Plaintiffs,

v.                                                    Civil Action No.:  3:26-cv-159-RCY

PINETREE APARTMENTS, LLC, et al.,

     Defendants.

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR PARTIAL
12(b)(6) MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Pinetree Apartments, LLC; Beachwold Holdings, LLC; Beachwold Residential, LLC; South Oxford Management, LLC; Nadra Yohannes; Ricky McConnell; and Alvin Peebles ("Defendants"),[1] by counsel, submit this Reply in Support of their Partial 12(b)(6) Motion.

## I.     **INTRODUCTION**

Plaintiffs cannot escape the fact that the alleged defect (inoperable sliding door) was discoverable through ordinary inspection, that Ms. Ghee discovered it months before the fire, and Plaintiffs only claims that a ground-level maintenance employee knew about the conditions in Unit G-8. Plaintiffs' attempt to transform this simple landlord-tenant dispute into a fraudulent concealment case through inflammatory rhetoric and unreasonable inferences should be rejected.

The Opposition confirms that Plaintiffs' claims rest on a series of implausible assumptions. Plaintiffs ask this Court to infer that painting over presumed termite damage in May 2022 concealed an inoperable sliding door for twenty-one months, despite the fact that Ms. Ghee slept

---

[1] Clearfield/Pinetree Apartments, LLC, and Beachwold Partners, LP, are dismissed. (ECF No. 14).

I-3048125.1

in that bedroom every night. Plaintiffs ask this Court to infer that upper management committed fraud based solely on general knowledge of limited water issues reported in other apartments that were repaired, without any allegation that these individuals knew about the specific conditions in Unit G-8, or even that they knew Plaintiffs' claimed theory was possible. And Plaintiffs ask this Court to impose liability on affiliated entities and individual employees without identifying any common law duty these parties owed to Plaintiffs. The Court should reject these implausible assumptions and grant Defendants' Motion to Dismiss.

## II.    LEGAL ARGUMENT[2]

**A.    Count I and II: Plaintiffs' Fraud and Concealment Claims Fail Because They Are Not Reasonably Supported by Pled Factual Contentions.**

### i.    The Alleged Defect Was Not and Could Not Be Concealed.

Plaintiffs' Opposition fails to address the most glaring flaw in their concealment theory: the operability of a Sliding Door cannot be concealed. *See Kuczmanski v. Gill*, 225 Va. 367, 370 (1983). This fact alone is sufficient and should result in dismissal of all fraud and concealment claims against all defendants. Plaintiffs attempt to deflect focus to the Sliding Door's header, but the header in isolation is not the defect. This is an egress claim. Plaintiffs' alleged harm comes from Ms. Ghee's inability to open the Sliding Door during the fire. *See* Compl. ¶ 99. That is it.

Plaintiffs argue that, in July 2023, when Ms. Ghee discovered that the Sliding Door could not open, she did not know "the supporting wooden framing inside the wall would only become out of square with time."[3] (ECF No. 17, at 12 n.4). Plaintiffs have not cited any authority for their

---

[2] Plaintiffs incorporated all arguments raised in her Motion for Remand regarding the joinder issues. *See* (ECF Nos. 12 13). Defendants' opposition is not due under Rule 7(F)(1) until April 3, 2026. Defendants will address the joinder issues then, and thus incorporate those arguments here.

[3] Ms. Ghee was also not entitled to ignore notice of a potential problem. *See Chavis v. Gibbs*, 198 Va. 379, 383 (1956) ("Caveat emptor is one of the best settled maxims of the law… He has no right to shut his eyes or his ears to the inlet of information[.]" (citations omitted)); *cf. E-Poch*

2

argument that Ms. Ghee needed to understand the entire causal chain when she concedes she was aware of the alleged defect's <u>potential hazard</u>. Because it is settled law, "[t]he relevant question under Virginia law is **not whether the defect itself … was obvious, but whether the hazard … was open and obvious**." *Freeman v. Case Corp.,* 118 F.3d 1011, 1014-15 (4th Cir. 1997); *see also John Aragona Enters., Inc. v. Miller*, 213 Va. 298, 304 (1972) ("The canal and its steep bank **constituted a danger** which was open and obvious to anyone old enough **to appreciate such a hazard**."); *High v. Coleman*, 215 Va. 7, 8 (1974) ("**The danger** was open and obvious, and he was bound to have **appreciated the existing hazard**[.]") (emphasis added).

When framed applying Virginia law to whether Ms. Ghee perceived the ***hazard and risk*** of an inoperable Sliding Door, the answer is clearly yes. Ms. Ghee admits that the very first time she tested the Sliding Door in July 2023, she knew the door would not open. *See* Compl. ¶ 28. The Sliding Door had allegedly already reached its maximum harm in July 2023: it would not open. *See id.* That is the exact problem that Plaintiffs allege caused harm. *See* Compl. ¶ 99. No further deterioration threatened to cause a different (or more) harm, nor was further knowledge necessary to perceive the risk and hazard of an inoperable Sliding Door.

Not only were Defendants' alleged actions incapable of masking the Sliding Door's operability, but the thing presumed in Plaintiffs' Complaint, the ongoing water intrusion and termite issues, would have become obvious despite the paint quickly thereafter. However, Ms. Ghee never reported any termites or leaking issues, and Plaintiffs claim the original May 2022 paint was still in place 21 months later (rather than bubbling up from termites or washing off from

---

*Props., LLC v. TRW Auto. U.S., LLC*, 286 Fed. App'x 276, 281 (6th Cir. 2008) (noting that the issue is whether a person "would be put on notice of a possible problem. Thus, a party cannot disregard a fact … and then allege the fact was unknown or undiscoverable." (cleaned up) (citations omitted)).

3

water intrusion). Fraud cannot lie where the plaintiffs are chargeable with conducting a reasonable inspection to see if the Sliding Door functioned – and in fact Ms. Ghee discovered the alleged hazard (inoperable Sliding Door) all by herself.  *See Kuczmanski*, 225 Va. at 370. No more ink need be spilled for the Court to dismiss all the fraud and concealment claims.

> ii.　　It Is Not Reasonable to Infer Termite Were Inhabiting the Header Above Unit G-8 When Unit G-8 Was Repaired.

There is no contemporaneous evidence from May 2022, when Unit G-8 was repaired, that termites were actively attacking the header above the Sliding Door (which is the only time that matters). If the alleged termite damage above the Sliding Door was not active, then the alleged concealment efforts have no legal effect. Plaintiffs only have two data points to claim that termite activity existed in May 2022: that sometime between 2017 and 2019 (at least three years before Ms. Ghee's tenancy), a prior tenant – with no expertise in termites – claims to have identified termites, *see* Compl. ¶ 20, and in 2024, three months after the fire and fire suppression efforts, and after the Sliding Door itself had been destroyed by the fire, Plaintiffs' expert identified termite damage inside the wall, *see* Compl. ¶ 3. Critically, in between those two data points, Building G was treated by PestNow for termites (2019), *see* Compl. ¶ 53, and then re-checked the following year (2020), with no sign of termites, *see* Compl. ¶ 54. Ms. Ghee also lived in the apartment from 2022 to 2024, and never reported any termite sightings or that the header above the Sliding Door showed termite damage. Thus, the plausible inference is that any damage seen by Plaintiffs' expert in 2024 was old, non-active termite damage that did not cause ongoing deterioration during Ms. Ghee's tenancy, or at the very least it cannot be accurately dated to a specific time.

> iii.　　Plaintiffs Fail to Meet Any Critical Element of the Fraud Claim.

Plaintiffs are also incorrect that they meet "without challenge" the other elements of fraud. *See* Pls.' Opp. (ECF No. 17, at 6). Plaintiffs meet none of the elements other than damages. There

4

I-3048125.1

have been hundreds of pages of briefing, and this briefing is at least the *fourth round* of substantive briefing. *See* No. 3:25-cv-17 (ECF Nos. 5-6, 26-27, 49). Plaintiffs' plethora of adjustments to the allegations over the last year have pertained to the concealment issue, but Plaintiffs continue to be on notice of Defendants' other essentially unchanged arguments.

Plaintiffs restate their argument that it was "material" that the apartment was "safe." *See* Pls.' Opp. (ECF No. 17, at 12 n.5). Silent representations that an apartment is "safe" are too vague to be actionable. *See, e.g.*, (ECF No. 9, at 16); *see also* No. 3:25-cv-17 (ECF No. 6, at 7), (ECF No. 27, at 16-17). Further, it requires a present fact, not a promise that something will or will not happen in the future. *Patrick v. Summers*, 235 Va. 452 (1988) (citations omitted) ("As a general rule, 'fraud must relate to a present or a pre-existing fact, and cannot ordinarily be predicated upon unfulfilled promises or statements as to future events.'"). Otherwise, every breach of contract would become a fraud case and the rule of caveat emptor – the default rule under Virginia law – would never apply because every tenant and purchaser would argue that they received the silent misrepresentation that the dwelling was "safe." Ms. Ghee's failure to ask Defendants about the Sliding Door, failure to inspect the Sliding Door upon moving in, failure to use the Sliding Door throughout her tenancy, and failure to check on whether the Sliding Door had been repaired after July 2023 all cut against any argument that she thought its operability was material. *See Guy v. Tidewater Inv. Props.*, 41 Va. Cir. 218, 220-21 (Norfolk 1996).

Plaintiffs also cannot state a claim for reasonable reliance when Ms. Ghee could have discovered the Compression Issue by merely attempting to open the Sliding Door. *See* No. 3:25-cv-17 (ECF No. 17). Tenants cannot rely on misstatements when they can easily find the truth for themselves. *See Kuczmanski*, 225 Va. at 370. It is no answer that Ms. Ghee did not understand the

I-3048125.1

structural causation theory (the Compression Issue), because she was fully aware of the possible harm. *See supra.* Plaintiffs' fraud claim fails on all counts.

        iv.        <u>Plaintiffs Fail to State a Fraud Claim Against Maintenance Employees.</u>

Because Plaintiffs have fraudulently joined McConnell and Peebles to this lawsuit, their failure to state a fraud or concealment claim against them was discussed in the Notice of Removal, (ECF No. 1), and will again be the subject of Defendants' upcoming opposition to Plaintiffs' Motion for Remand. It has also been repeatedly briefed. *See* No. 3:25-cv-17 (ECF Nos. 6, 27, 32, 49, 55). Plaintiffs' Opposition also does not substantively discuss this point, so Defendants incorporate all other briefing.

        v.        <u>Plaintiffs Fail to State a Fraud Claim Against Anyone Else (Including Yohannes and the Affiliated Entities).</u>

The only defendant alleged to have any specific knowledge whatsoever about the conditions in Unit G-8 is the maintenance person who painted Unit G-8 in May 2022. Like with any fraud claim, Plaintiffs must show as to each Defendant (1) knowledge of the material fact; (2) knowledge of the concealment; and (3) intent for the concealment. *See Cohn v. Knowledge Connections, Inc.*, 266 Va. 362, 368 (2003); *see also Dobson v. City of Annapolis*, No. 25-cv-03128, 2025 LX 198926, at *4 (D. Md. Oct. 8, 2025) (noting that collective pleading is insufficient). Plaintiff fails to cite facts that these Defendants knew about the alleged concealment in Unit G-8. Plaintiffs' attempt to plug these gaping logical holes with layers of unreasonable inferences is ineffective.

First, Plaintiffs assert that "the Defendants knew that siding needed to be removed from all of the apartments[.]" (ECF No. 17, at 10) (emphasis added); *see also id.* at 14. This claim is ridiculous! Pinetree has 144 units. Pinetree was not the original owner but purchased the complex in 2011, about 16 years after construction. It is unknown who installed the flashing or if there were

6

prior repairs. Further, even if the subset of units experiencing water intrusion had incorrect flashing, this does not create any inference about the condition of units that <u>were not</u> experiencing water intrusion (and Plaintiff never claimed Unit G-8 was experiencing water intrusion issues). ***The flashing on Unit G-8 could have been installed correctly or even replaced by the prior owner.*** The complete lack of substantially similar symptoms prevents the other units from being substantially similar. *Roll 'R' Way Rinks, Inc. v. Smith*, 218 Va. 321, 325 (1977) (requiring that issues occur "under substantially the same circumstances"). Plaintiffs also demonstrate confirmation bias, stating that "every time private contractors pulled off siding and looked, they found some or all of the foregoing" – ignoring the fact the siding was only pulled off for active water intrusion. Yohannes denied that proactive inspection of units without issues would be reasonable. *See* Yohannes Depo. 178:1-180:6 (Ex. I) (ECF No. 1-13, at 5) ("Sixteen times out of 144 units would not require removing the drywall from 144 units."). Apartment complexes reasonably make repairs when there are symptoms of issues. The absence of symptoms reasonably supports the absence of issues. Plaintiffs cannot blanketly accuse Defendants of knowing something that is not reasonable.

It is yet another logical leap to claim that the water intrusion issues were causing the Compression Issue, or that Defendants knew about the Compression Issue. There is no evidence that Defendants knew the Compression Issue was possible.[4] Nor does the Compression Issue

---

[4] Defendants pointed out that "Plaintiffs fail to identify any apartments that experienced water intrusion issues **and** reported a correlated difficulty with opening the sliding door[.]" (ECF No. 9, at 13) (emphasis in original). Plaintiffs' Opposition still fails to connect opening issues, and not merely leaking issues, to improperly installed flashing. *See Sawyers v. UPS*, No. 18-CV-1037, 2019 LX 154571 (M.D.N.C. Sept. 11, 2019) (observing that "failing to respond to an argument constitutes an abandonment of a claim" (citations omitted)).

7

follow logically from a compromised wooden header.[5] *See* Pls.' Opp. (ECF No. 17, at 15). Plaintiffs' allegations cut against the Compression Issue. It is far more likely that the Sliding Door would experience water leaks through the loosened gaps. Unlike the Compression Issue, Plaintiffs' allegations support this because tenants complained about water intruding through gaps, and Plaintiffs even included a photograph of a tenant's attempt to seal the gaps. *See* Compl. ¶ 38(c). If there were gaps allowed flowing water, then the headers did not compress the Sliding Door, because the alleged weight of the wood would have sealed gaps and stopped the water flow. Without notice, Plaintiffs cannot plausibly allege that anyone knew about the Compression Issue.

Plaintiffs' theory on "intent" is equally weak. Intention requires a "knowing and a deliberate decision" with "intent to mislead[.]" *Norris v. Mitchell*, 255 Va. 235, 241 (1998); *Winn v. Aleda Constr. Co.*, 227 Va. 304, 308 (1984). These Defendants did not know Ms. Ghee or form a specific intent to defraud her. *See Cohn v. Knowledge Connections, Inc.*, 266 Va. 362, 368 (2003) (requiring knowledge before intent). To replace this, Plaintiffs champion the theory of top-to-bottom pressure to save money. Plaintiffs point to only two things that allegedly were rejected: (1) sliding doors were repaired on a "piecemeal basis"; and (2) not every building was treated for termites in 2019. (ECF No. 17, at 13). Plaintiffs' first argument presumes the logical fallacy that every unit needed repairs. *See supra.* Pinetree repaired units when needed, and Plaintiffs only cite apartments *where repairs were made*. It is thus nonsensical to argue that Pinetree avoided repairs based on the fact that Pinetree made repairs. Regarding the termite treatment, Plaintiffs claim that

---

[5] Plaintiffs claim their experts have "seen the same type of damage" before. Pls.' Opp. (ECF No. 17, at 15). This is an overstatement. Dano Holland, an engineer only opined on the Sliding Door itself. Notably, Holland's opinions were after the Sliding Door was removed and "destroyed in the fire." Holland. Aff. ¶ 15. Robert Kunst, the termite expert, was only "aware of instances where termite damage has interfered with the operation of sliding glass doors," without reference to the Compression Issue or details about how termites had interfered, or any attempt to connect the vague anecdote to the subject Sliding Door. *See* Kunst Aff. ¶ 5.

8

PestNow recommended all townhouses be treated, Compl. ¶ 93, but PestNow later specified which buildings had active termites in 2019, all of which were treated (including Building G), *see* **Exhibit A**. It is not reasonable to fault Defendants for not treating buildings where treatment was not needed because there were no termites. Plaintiffs have not identified any legitimate safety-related repairs that were knowingly rejected for cost reasons.

Even if the Court gives credence to the theory that repairs were slow-rolled (which is not supported by the evidence pertaining to repaired apartments), making business decisions on the timing of repairs that will disrupt tenants is not *fraudulent*. Paragraph 119 of the Complaint shows that Defendants engaged in repairs:

- Dan DeStefano told Gideon Friedman that they would spend money to repair the termite issues. *See* Compl. ¶¶ 91 & n.10; 119.

- Rob Glass received a copy of an invoice repairing Unit O-10 and negotiated a contract for repair. *See* Compl. ¶¶ 91 & 11; 119.

- Tracy Arruda and Yohannes both had apartments repaired. *See* Compl. ¶ 119.

None of the communications concern apartments that were denied repairs. More importantly, there is not a single document, quote, or circumstance alleged that gives rise to a reasonable inference that ground-level maintenance had been intentionally directed by Yohannes or the Affiliated Entities to actively conceal damage let alone the specific type of damage Plaintiff claims was concealed. The number of apartments that were repaired instead supports the reasonable inference that Yohannes and the Affiliated Entities sought out third-party contractors and paid for repairs when necessary. Stripped of the hyperbole and rhetoric, there is simply no intent to show fraud.

vi.    Plaintiffs Cannot State a Claim for Constructive Fraud Based on Concealment as a Matter of Law but Must Show Intent to Defraud.

As a last ditch effort, Plaintiffs reference "constructive fraud," claiming that they do not need to show intent. But *constructive fraud does not exist for silent misrepresentations*, only

9

affirmative ones. "[U]nlike fraud for affirmative misrepresentations, concealment requires a showing of intent to conceal a material fact; reckless nondisclosure is not actionable." *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 827 (4th Cir. 1999) (citing *Norris v. Mitchell*, 495 S.E.2d 809, 812 (Va. 1998)); *Cohn v. Knowledge Connections, Inc.*, 266 Va. 362, 368 (2003) ("Proof of fraud by nondisclosure 'requires evidence of a knowing and deliberate decision not to disclose a material fact.'" (quoting *Lambert v. Downtown Garage*, 262 Va. 707, 714) (2001)). This is "a matter of common sense and logic," because concealment (which "always involves deliberate nondisclosure") and constructive fraud (which capture "negligent … but otherwise innocent … omissions") are claims that "cannot overlap." *N. Va. Eye Inst., P.C. v. Cynosure, LLC*, No. 21-cv-00008, 2021 LX 75804, at \*13 (W.D. Va. Apr. 20, 2021). The Complaint does not allege an affirmative misrepresentation – indeed, nothing was said to Ms. Ghee about the Sliding Door. *See* Compl. ¶ 27. Again, Plaintiffs must show intent. There was none.

**B.     Count III: Plaintiffs Cannot State Negligence Claim Against the Other Defendants Because There Is No Duty.**

   i.       <u>The Affiliated Entities Did Not Owe a Common-Law Tort Duty.</u>

The existence of a legal duty is a pure question of law. *See Parker v. Carilion Clinic*, 296 Va. 319, 348 (2018). Plaintiffs have not cited any Virginia law imposing a tort duty on asset managers like Beachwold Residential, LLC, and Beachwold Holdings, LLC, and they scantly cited precedent that *might, but does not,* impose a tort duty on property managers like South Oxford Management, LLC.[6] *See Milburn v. J.C. Penney Props.*, No. CL-2006-7068, 2007 Va. Cir. LEXIS 42, at \*3-4 (Fairfax 2007) (noting that the Virginia Supreme Court *has not determined* the scope of a property manager's duties to invitees). To the extent it exists, Virginia law only imposes the

---

[6] Even there, Plaintiffs only rely on tort duties that apply to the property owner/landlord.

duty of care that Plaintiffs seek here – for proactive inspection to repair existing defects, rather than reactive repairs of reported defects – on the property owner. *See, e.g.*, Va. Code Ann. § 55.1-1200 (defining landlord is the "owner, lessor, or sublessor of the dwelling unit"); *Taylor v. Va. Constr. Corp.*, 209 Va. 76, 79 (1968) (observing that when "the owner of a building demises separate parts thereof to different tenants," the common area "remains in control of the landlord"); *Turner v. Carneal*, 156 Va. 889, 893 (1931) (observing that the argument the defendants should have been aware of the alleged condition might be "entitled to more consideration" if against the landlord, but when against the agent, it was dismissed).

Plaintiffs continue to insist that the Affiliated Entities "owned" Pinetree, but only Pinetree Apartments, LLC, owned the apartments[7] – each of the Affiliated Entities had defined contractual duties and acted pursuant to dedicated agreements. Further, Plaintiffs willfully mischaracterize the asset manager's involvement in maintenance. The asset manager was not involved in day-to-day maintenance operations that involved only South Oxford's employees (e.g., the make-ready work in Unit G-8 in May 2022). Plaintiffs refer to Paragraph 119 of the Complaint, but this only supports that the Affiliated Entities' alleged control pertained to third-party contractor agreements for larger-scale projects, not day-to-day maintenance – and notably, only for repairs that had been affirmatively identified to them. Nothing in Plaintiffs' Complaint supports assumption of daily maintenance or proactive regularly scheduled inspections.

ii.     The Affiliated Entities Did Not Assume a Duty.

Plaintiffs' reference to Restatement (Second) of Torts § 324A (1965) is similarly problematic and unpersuasive. To trigger the Restatement, Plaintiffs must show an assumption "to

---

[7] Property law requires more than control for ownership, but must also valid conveyance by deed, compliance requirements for recordation, delivery, etc. *See, e.g.*, *Wintergreen Homestead, LLC v. Ray M. Pennington & Bettie's Wintergreen, LLC*, 104 Va. Cir. 362 (Nelson County 2020).

11

render services to another which he should recognize as necessary for the protection of a third person or things[.]" § 324A. There are two potential actions which Plaintiffs argue demonstrates assumption: by contracting for termite repairs in 2019; and by approving third-party contractors to make repairs to sliding glass doors that had water intrusion issues. Neither of these show an assumption of a duty to protect tenants from the Compression Issue.

Regarding the termites, the scope of the Affiliated Entities' involvement was knowledge of PestNow's 2019 work – years before Ms. Ghee's residence in Unit G-8 – without any discussion about the possibility for future termite infestation or agreement to prevent same. Nothing about negotiating (or even paying for, which is disputed) a one-time termite treatment imposes a legal duty to prevent future termite damage forever. It is also not even alleged that the Affiliated Entities selected PestNow or had any involvement with PestNow after 2019. The 2019 work treated Building G, which did not have any termite issues the following year, also breaking any causal chain with Plaintiffs' tenancy. *See* Compl. ¶ 53. The Complaint does not support any inference that the Affiliated Entities assumed a duty to protect tenants from alleged termite damage in 2024.

Regarding the third-party contractor repairs to specific water-damaged units, the asset manager only assisted in negotiating contracts for third-party repairs of specific apartments with known issues. The Affiliated Entities never discussed having the entire complex inspected. This case is thus distinguishable from *Cline v. Commonwealth*, in which the Court found that an assumption of duty *might* stand *if* the plaintiff could prove that an inspection conducted for the purpose of remediation uncovered the existence of a specific harmful tree, whose danger was understood, and then chose not to have it removed. *See* No. 151037, 2016 Va. Unpub. LX 20, at *4-5 (Sept. 8, 2016). In contrast, the Affiliated Entities never contemplated an inspection of Unit G-8. The Affiliated Entities had no knowledge about any alleged conditions in Unit G-8. The

12

I-3048125.1

Affiliated Entities never made a judgment about whether Unit G-8 constituted hazard – and also never knew about the novel Compression Issue in the first place. *See supra*. No assumption of duty can be implied without this knowledge.

Virginia law requires that assumption of duties must be expressly shown. In *A.H. v. Church of God in Christ, Inc.*, the Supreme Court of Virginia emphasized that "there must be a clear expression of intent by a defendant to take on a legal duty to protect a plaintiff who is justifiably relying upon that clearly expressed intent." 297 Va. 604, 624 (2019). Even cases like *Burns v. Gagon*, which Plaintiffs cite, only open the possibility for an implied assumption when there is some communication of intent. *See* 283 Va. 657, 672 (2012) (noting the allegation that "Burns assumed a duty to investigate Diaz' report … because Burns told Diaz that he would 'alert security,' 'look into it,' and 'take care of it'"); *Kellerman v. McDonough*, 278 Va. 478, 489 (2009) (noting that the defendant "agreed and said 'don't worry, I promise we'll take good care of her'"); *Didato v. Strehler*, 262 Va. 617 (2021) (noting duty for physicians to test report results when plaintiffs asked). Plaintiffs cite to no cases that infer an assumption of duty to the plaintiff from services rendered to someone else. *See Hope v. Commonwealth*, 92 Va. Cir. 6, 21 n.15 (Staunton 2015). The Affiliated Entities never expressed an intent to assume the alleged ongoing inspection duties of a property owner – and Ms. Ghee was not "justifiabl[e in] relying" upon such intent because she did not even know the Affiliated Entities existed.

Neither is the simple existence of a contract sufficient to show assumption of tort duties. In *Cawlo v. Rose Hill Reserve Homeowners Ass'n*, the plaintiff tried to argue under the Restatement that the defendant assumed a duty of care by accepting a contract regarding the property. 106 Va. Cir. 235, 243 (Fairfax 2020). The Court rejected this argument because the defendant did not have "an express assumption of duty" and never even interacted with the

13

plaintiffs. *Id.* at 243. Similarly, the Affiliated Entities' contractual relationship with Pinetree Apartments, LLC, cannot be the source of a tort duty to the tenants. *See supra.* There are no facts in the Complaint that support an assumption of duty by the Affiliated Entities.

   iii.  The Doctrine of *Respondeat Superior* Does Not Apply.

  Plaintiffs take the unprecedented tack that the Affiliated Entities are responsible for Pinetree Apartments, LLC, and/or South Oxford Management, LLC's actions under the doctrine of *respondeat superior.* This doctrine governs the vicarious liability of an employer for the tortious acts of its employees. *See Our Lady of Peace, Inc. v. Morgan*, 297 Va. 832, 844 (2019) (requiring the showing of a master/servant or employer/employee relationship and a wrongdoing "within the scope of employment"). Plaintiffs do not cite any authority for the proposition that *respondeat superior* applies between separate corporate entities. Rather, the only doctrine that applies to vicarious liability between separate corporate entities is veil piercing. Defendants thus incorporate all arguments about why Plaintiffs have failed to state a claim for piercing the corporate veil. *See* No. 3:25-cv-17 (ECF No. 55, at 21-26).

   iv.  Yohannes Was an Individual Employee of South Oxford Management Who Can Only Be Held Personally Liable for Malfeasance.

    *a. Yohannes Can Only Be Held Liable for Malfeasance not Nonfeasance.[8]*

  Contrary to Plaintiffs' assertion, *Harris* is not the only Virginia case to have ever distinguished between non-feasance and malfeasance for employees.[9] *See, e.g.*, *Dixon v. S. Boston*

---

[8] Plaintiffs do not meaningfully discuss the nonfeasance/malfeasance distinction as pertaining to McConnell and Peebles, but the same case law and arguments are relevant as to them.

[9] Not only does *Hope v. Commonwealth* not follow the majority of Virginia case law, but its distinction is unpersuasive here because the *Hope* employee had specific knowledge about the hazardous drop-off and failed to complete scheduled repairs. 92 Va. Cir. 6 (Staunton 2015). Yohannes did not know about the conditions in Unit G-8.

14

*Corp.*, 69 Va. Cir. 313, 314 (Richmond 2005) ("Under Virginia law, an employee of the owner or operator of the premises … may be held liable only for affirmative acts of negligence, not merely because, in the status of an employee of the owner or operator, he or she is guilty of an omission." (*quoting Beaudoin v. Sites*, 886 F. Supp. 1300, 1303 (E.D. Va. 1995)). No cause of action can accrue to a third party based only on duties an employee only owes the employer:

> "Though a third person suffers a loss as a result of an agent failing to perform his duties to his principal, if that breach of duty to the principal is unaccompanied by any act or omission of the agent whereby a duty owing by him to the third party is breached, <u>no cause of action accrues in favor of the latter against the agent</u>." … [Defendant's] duty to be at his appointed place and perform his appointed tasks is a duty he owed to his employer, VDOT. <u>It is not a duty owed to [Plaintiff]</u>.

*Slone v. Hickock*, 25 Va. Cir. 422, 424 (Botetourt County 1991) (quoting *Knight v. AH Coast Line*, 73 F.2d 76, 77 (5th Cir. 1934)) (emphasis added). The Fourth Circuit has routinely applied this distinction to employees. *See, e.g.*, *Orr v. Delhaize Am.*, No. 09-cv-527, 2010 U.S. Dist. LX 161711 (E.D.Va. Feb. 19, 2010); *Holloway v. Petsmart, Inc.*, No. 10-cv-132, LX 157300 (July 15, 2010); *Walker v. Kroger Ltd. P'ship I*, No. 19-cv761, LX 78433 (May 2, 2020); *Krugylakv. Home Depot U.S.A., Inc.*, No. 22-cv-0024, LX 53933 (Mar. 28, 2023); *cf. Metz v. McCarthy*, No. 24-1820, 2026 LX 5594, at \*12 (4th Cir. Feb. 25, 2026).

The distinction in *Tingler v. Graystone Homes, Inc.*, "has a centuries-old provenance[.]" *McDiarmid Assocs. v. Yevdokimov*, 2022 Va. Unpub. LEXIS 11, at \*8 (June 23, 2022) (quoting *Tinger*, 298 Va. 63 (2019)). Virginia law makes it clear that the agent (e.g., employee) must owe a duty *separate from* the duty that he/she owes the principle (e.g., employer) and that is *personally owed* to the plaintiff to make the agent liable to the third party directly: "The servant's mere omission of duty towards his master <u>will not</u> give the person a right of action, but omitting to perform a duty which he <u>and</u> his master owe to a third person may give a right of action." *Funch,*

15

*Edye & Co. v. Gulf Smokeless Coal Co.*, 148 Va. 167, 175 (1927) (emphasis added). Far from being unique, the principle in *Harris* is found throughout Virginia law.

The application of *Tingler* and the malfeasance/nonfeasance distinction to employees is logical. "The question of liability for negligence cannot arise at all until it is established that the man who has been negligent owed some duty . . . Where no relationship exists, it is axiomatic that there is no duty." *Quisenberry v. Huntington Ingalls, Inc.*, 296 Va. 233, 243 (2018) (citations omitted). Yohannes has no personal relationship with Ms. Ghee, and outside her employment for South Oxford, they are strangers under the law. No duty to the tenants could possibly be asserted absent Yohannes's employment with South Oxford. Thus, the only nexus between Yohannes and Ms. Ghee arises out of her contractual employment for South Oxford. Without her employment contract (creating duties to South Oxford, not Plaintiffs), Yohannes is just a Virginia resident that Plaintiffs have targeted to defeat diversity.

### b.   *Yohannes Was Not an Individual "Landlord."*

Plaintiffs' argument that Yohannes was an individual landlord rather than an agent of South Oxford should be dismissed outright, for all the reasons stated above. *See* (ECF No. 15, at 19). Yohannes was not the landlord. Yohannes has never had any ownership interest in the Pinetree apartments. Yohannes did not personally enter into the lease with Ms. Ghee. Yohannes never even knew Ms. Ghee's name until after the subject fire.

Plaintiffs' left-field argument relies solely on *Gumenick v. United States*, 213 Va. 510 (1973), which contains a rather generic observation that the "appellants and their agents had full authority and the duty to make reasonable inspections of the premises and to make needed repairs." *Gumenick v. United States*, 213 Va. 510, 516 (1973). Notably absent from this discussion is the critical issue: **to whom would the *agents* – not the landlord – have owed that duty?** Nowhere

16

is there Virginia authority that an agent of the landlord – or the agent of a property management company – owes the same tort duties to tenants as the landlord. The *Milburn* court observed the critical difference between "the duty of *individual employees* of the owner or operator of the premises" and the "corporate manager in charge of the overall safety of the premises." 2007 Va. Cir. LEXIS 42, at *4 (discussing *Beaudoin*, 886 F. Supp. at 1303). Absent her employment, Yohannes and Ms. Ghee are strangers, and there is no common law duty. Opening the door to individual personal liability requires more than an employment relationship.

## C.      Count IV: The Virginia Consumer Protection Act.

Defendants' argument about the VCPA is simple and straightforward: an alleged silent misrepresentation that Unit G-8 was "safe" does not trigger the misrepresentation exception under the VCPA because if the Court credits Plaintiffs' argument, the VCPA's designation that the VRLTA otherwise controls the landlord-tenant relationship would have no meaning; the *caveat emptor* rule would be eviscerated; and every tenant could make a claim under the VCPA for any defect in their apartment that they claimed was safety related.[10] To be clear, Defendants do not dispute that the text of the VCPA may cover fraudulent misrepresentation, just that a silent, non-verbal generalized representation that an apartment is "safe" is nonactionable because the requirement to provide a safe and habitable apartment is controlled by the VRLTA. *See* Va. Code § 59.1-199. And, as stated above, it requires a present fact, not a promise that something will or

---

[10] Plaintiffs rely on *Stith v. Liberty Pointe*, 110 Va. Cir. 141 (Petersburg 2022), but *Stith* relies on a provision *from the VRLTA* for the possible existence of a misstatement. *Id.* at 145 (citing Va. Code § 55.1-1220). The VRLTA has its own remedies and provisions, and if the legislature intended violations of the VRLTA to also be violations of the VCPA, then very explicit carveout that actions subject to the VRLTA do not give rise to remedies under the VCPA would not have been added. *See* Va. Code § 59.1-199.  *Stith* is the only Virginia case to hold this, contains no discussion of its logical fallacy, and appears to be wrong.

I-3048125.1

will not happen in the future. *See Patrick*, *supra*. To hold otherwise would mean every landlord-tenant action was a fraud claim.

Further, *Lambert v. Downtown Garage Inc.* dictates that under the VCPA, any silent misrepresentations must still include evidence of a knowing and deliberate decision not to disclose a material fact. 262 Va. at 714. As discussed above, Plaintiffs cannot state a claim that Defendants intended to deceive Ms. Ghee. Unlike in *Guy v. Tidewater Investment Properties.*, 41 Va. Cir. 218 (Norfolk 1996), where the defendant had notice of specific apartments units that contained lead paint, with a corresponding notice from the public health department about its health effects, Plaintiffs have not adequately pled even that the Compression Issue interfered with other sliding glass doors at Pinetree. *See supra.*; *see also Aboushaban v. Am. Signature, Inc.*, 2021 LX 42807, at *10 (E.D. Va. Feb. 1, 2021) ("Proof of an actual infestation would be required to show that Defendants had knowledge of it, and Plaintiffs have provided no such proof."). Moreover, any generalized opinions that an apartment is "safe" are non-actionable opinion statements, not fraudulent statements. *See Yuzefovsky v. SJW, Ltd. P,shp.*, 49 Va. Cir. 183, 185 (Richmond 1999). The Court should dismiss the VCPA claim.

**D.      Count V: Nuisance.**

Plaintiffs seek to tack on a nuisance claim to her negligence claim, but Plaintiffs cannot bring both – the nuisance claim is subsumed in and replaced by the negligence claim. *See Robinson v. Johnson*, 48 Va. Cir. 66, 72 (Richmond 1999) ("Where the acts or omissions constituting negligence are the identical acts which it is asserted give rise to a cause of action for nuisance, the rules applicable to negligence will apply."). All of the arguments raised regarding the lack of duty are thus applicable here. Because Plaintiffs can only potentially allege a duty against Pinetree Apartments, LLC, and possibly, but not here, against South Oxford Management, LLC, it is only necessary to respond to Plaintiffs' arguments as they pertain to these two entities – although even

18

these entities' alleged liability would only extend as far as the previously stated negligence claims. *See supra.*

The alleged defect here was a natural condition caused by the progression of water and termite damage, and *Cline v. Dunlora South, LLC*, 284 Va. 102, 109 (2012), is on point. Plaintiffs attempt to transform the actual condition by claiming that the "Defendants improperly installed flashing," but the Complaint does not allege Defendants installed the flashing, and Pinetree did not purchase the property until 16 years after the original construction. *See* Compl. ¶ 37. There are also no factual allegations supporting that G-8 had the alleged flashing issue. Plaintiff's expert does not mention flashing. *See* Holland Aff. ¶ 17. Further, Plaintiff's Sliding Door was destroyed in the fire, and the apartment was repaired without inspection of the flashing. *See* (ECF No. 1, at 9 n.5) (discussing Plaintiffs' counsel's failure to request preservation during post-fire inspections).

Plaintiffs' reference to *Fancher v. Fagella* is also misplaced. 274 Va. 549 (2007). *Fancher* involved a neighbor requesting an injunction to have the alleged nuisance permanently removed from a neighbor's property; it did not involve landlord-tenant disputes, which are more appropriately dealt with under *Oliver v. Cashin*, 192 Va. 540 (1951). To the extent Plaintiffs claim that the nuisance was in the common area under Pinetree's exclusive control, then this is just a negligence action based on a landlord's duty to maintain common areas, not a nuisance claim. *Kesler v. Allen*, 233 Va. 130, 133 (1987) (noting that the landlord has "a duty to use ordinary care to maintain in a reasonably safe condition any part of the leased premises that was reserved for the common use of all tenants"); *see also Walisser v. Harris*, 81 Va. Cir. 14, 17 (Nelson 2010) (dismissing nuisance claim as "simply another way for the plaintiff to allege negligence").

## E.    Punitive Damages.

Plaintiffs base their request for punitive damages on a single maintenance man with a paintbrush. Painting a header above a sliding glass door to repair chipping paint is not the type of

I-3048125.1

"egregious conduct" that justifies punitive damages in Virginia. *See A.H. v. Church of God in Christ, Inc.*, 297 Va. 604, 637 (2019). If Virginia has disallowed punitive damages for drunk driving with prior DUI convictions or fleeing the scene of an accident – conduct that is socially reprehensible and illegal – how can maintenance repairs to an apartment be an extraordinary case? *See Hack v. Nester*, 241 Va. 499 (1990); *Dunn v. Dawson*, 34 Va. Cir. 179 (Fairfax 1994). There is also no evidence that anyone at Pinetree, Yohannes, or the Affiliated Entities even knew the header was painted, let alone that it allegedly had external showing termite damage, meaning no one ever ratified the conduct. *See., e.g.*, *A.H.*, 297 Va. at 637 (punitive damages cannot be awarded against a master or principal for the wrongful act in which he did not participate, authorize, or ratify). There also should not be any intentional tort upon which to base such damages: not only have Plaintiffs failed to pled fraud and/or concealment, but nothing supports willful or wanton conduct even on the negligence claim. *See supra*.

It is not an answer that the punitive damages should simply go to a jury. "It is for the court to say whether the evidence tends to establish a proper case for their allowance, and for the jury to determine in such case whether they should be allowed." *Evans v. Schuster*, 178 Va. 61, 66 (1941). No matter how many ways the allegations are spun, this is not a punitive damages case. It never has been and never will be more than a simple landlord-tenant negligence claim, with no possibility of punitive damages.

## III.    CONCLUSION

For the foregoing, reasons stated in opening briefing (ECF Nos. 9-10), and any reasons stated at any hearing, the Defendants respectfully request this Court PARTIALLY DISMISS Plaintiffs' Complaint with prejudice, and order further relief as the Court deems appropriate.

**PINETREE APARTMENTS, LLC,
BEACHWOLD HOLDINGS, LLC,**

20

I-3048125.1

**BEACHWOLD RESIDENTIAL, LLC, SOUTH OXFORD MANAGEMENT, LLC, NADRA YOHANNES, RICKY MCCONNELL, and ALVIN PEEBLES**


By: */s/ Joseph P. Moriarty*
    Joseph P. Moriarty (VSB No. 68465)
    Kevin M. Kennedy (VSB No. 75071)
    Bryn L. Clegg (VSB No. 96923)
    WILLCOX & SAVAGE, P.C.
    440 Monticello Avenue, Suite 2200
    Norfolk, Virginia 23510-2243
    Telephone: (757) 628-5500
    jmoriarty@wilsav.com
    kkennedy@wilsav.com
    bclegg@wilsav.com
    *Counsel for Pinetree Apartments, LLC, Beachwold Holdings, LLC, Beachwold Residential, LLC, South Oxford Management, LLC, Nadra Yohannes, Ricky McConnell, and Alvin Peebles*

I-3048125.1

## CERTIFICATION

I hereby certify that on this 26th day of March, 2026, I electronically filed the forgoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Charles H Cuthbert, Jr. (VSB No. 14519)
Richard M. Cuthbert (VSB No. 82025)
Cuthbert Law Offices, P.C.
220 North Sycamore Street
Petersburg, VA 23803-3228
Telephone:  804-733-3100
ccuthbert@cuthbertlaw.com
rcuthbert@cuthbertlaw.com
*Counsel for Plaintiff*

Mark J. Krudys (VSB No. 30718)
Daniel Guinnane Zemel (VSB No. 95073)
The Krudys Law Firm, PLC
Truist Place
919 East Main Street, Suite 2020
Richmond, VA 23219
Telephone:  804-774-7950
mkrudys@krudys.com
dzemel@krudys.com
*Counsel for Plaintiff*

Alexander Francuzenko (VSB No. 36510)
Philip C. Krone (VSB No. 87723)
Dunn Craig Francuzenko
3251 Blenheim Blvd., Suite 404
Fairfax, VA 22030
Telephone: 703-856-7480
alex@dunncraig.com
pkrone@dunncraig.com
*Counsel for PestNow of Central Va, LLC*

*/s/ Joseph P. Moriarty*
Joseph P. Moriarty (VSB No. 68465)
Kevin M. Kennedy (VSB No. 75071)
Bryn L. Clegg (VSB No. 96923)
WILLCOX & SAVAGE, P.C.
440 Monticello Avenue, Suite 2200
Norfolk, Virginia 23510-2243
Telephone: (757) 628-5500
jmoriarty@wilsav.com
kkennedy@wilsav.com
bclegg@wilsav.com
*Counsel for Pinetree Apartments, LLC, Beachwold Holdings, LLC, Beachwold Residential, LLC, South Oxford Management, LLC, Nadra Yohannes, Ricky McConnell, and Alvin Peebles*

22

I-3048125.1