IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

NYEISHA S. GHEE and LISA Y. CAMPBELL,
ADMINISTRATORS OF THE ESATE OF
MARK KAHLIL GHEE, DECEASED,

     Plaintiffs,

v.                             Civil Action No.:  3:26-cv-159-RCY

PINETREE APARTMENTS, LLC, et al.,

     Defendants.

**DEFENDANTS' BRIEF IN OPPOSITION
TO PLAINTIFF'S MOTION TO REMAND**

     Pinetree Apartments, LLC; Beachwold Holdings, LLC; Beachwold Residential, LLC; South Oxford Management, LLC; Nadra Yohannes; Ricky McConnell; and Alvin Peebles ("Defendants"), by counsel, submit this Brief in Opposition to Plaintiffs' Motion to Remand.

## I.     INTRODUCTION

     Plaintiffs challenge removal on a single ground – the sustainability of the claims against a third-party termite contractor and the property manager's former employees. The Court should reject Plaintiffs' attempt to defeat diversity by fraudulently joining these nondiverse defendants. Virginia law is unequivocal: neither third-party contractors nor individual employees owe Plaintiffs a common-law duty in these circumstances, nor have they committed any affirmative wrongful act. Plaintiffs' own allegations, even if accepted as true, amount exclusively to alleged failures to act – classic nonfeasance – which cannot support a liability under settled Virginia law. The absence of any legal duty is a matter of law for the Court to decide, and it requires dismissal of Plaintiffs' claims against the nondiverse defendants and denial of this Motion.

I-3056463.1

Plaintiffs' claims against PestNow of Central Virginia, LLC ("PestNow"), are based entirely on the third-party contractor's alleged failure to eradicate termites at the apartment complex years before Ms. Ghee became a tenant, not out of any affirmative wrongdoing toward the Plaintiffs and/or their Decedent themselves. Under Virginia's source of duty rule, PestNow owed no common-law duty to Plaintiffs because any duty PestNow owed arose solely from its contractual relationship with Pinetree Apartments, LLC, not from any independent tort obligation to future tenants. Plaintiffs define PestNow's alleged wrongs as failures to act (e.g., alleged failure to follow termiticide application instructions, failure to stop termite damage, failure to inspect building interiors, and failure to drill holes). These are nonfeasance claims, which under Virginia law do not create a viable claim against a third-party contractor like PestNow. Neither does *Kaltman v. All American Pest Control, Inc.*, 281 Va. 483 (2011), save Plaintiffs' claim, because the liability there was owed by a party who directly contracted with the plaintiffs and caused affirmative harm. Virginia Code § 3.2-3939(B) is also inapplicable because Plaintiffs' harm is alleged from the failure to apply termiticide broadly enough, not the act of spraying termiticide causing the harm. PestNow has been fraudulently joined.

Plaintiffs' claims against the property manager's former employees (the "Individual Employees," Nadra Yohannes, Ricky McConnell, and Alvin Peebles) are similarly based on alleged nonfeasance. Employees cannot be held liable to third parties for alleged failures to perform duties owed to employers. Plaintiffs allege that Individual Employees failed to properly repair the door, failed to address underlying structural before painting over damage, and failed to diagnose the problem. This is classic nonfeasance: failures to act that would have prevented harm, rather than acts that caused harm. The Individual Employees had no relationship with Ms. Ghee and/or her children outside of their employment, and therefore owed no independent common-law

duty. Plaintiffs' attempt to hold individuals personally liable for an $80 million dollar lawsuit is unprecedented and is based solely an improper motive behind their joinder: to defeat federal diversity jurisdiction.

It is obvious that these nondiverse defendants have been fraudulently joined to defeat diversity jurisdiction. This is nothing more than a traditional landlord-tenant negligence dispute based on an egress claim, which has been briefed many times before this Court,[1] yet despite multiple rounds of re-pleading and re-briefing, the core issues raised remain unchanged. Pinetree Apartments, LLC, the owner, is the target defendant and the only necessary defendant. The nondiverse defendants are procedural surplusage. Thus, to prevent procedural gamesmanship, the Court should deny Plaintiffs' Motion and dismiss the nondiverse defendants.

Plaintiffs suggest that this case presents thorny state-law questions requiring remand to state court. That characterization is incorrect. The Virginia Supreme Court, Virginia circuit courts, the Fourth Circuit, and this Court have consistently applied Virginia's longstanding law on the malfeasance-nonfeasance distinction in cases involving third-party contractors and individual employees. Similarly, the source-of-duty rule is a foundational principle that has been applied for decades to determine whether duties arise from contract or tort. This Court is fully capable of applying Virginia law to the Plaintiffs' allegations in the Complaint to resolve the straightforward legal issues presented in this case. Federal jurisdiction is proper, and this case should proceed in this Court.

## II.   LEGAL STANDARD

---

[1] To the extent this brief does not respond to issues that have been discussed in Defendants' other briefing, Defendant intends no waiver of those issues by not expressly reiterating them herein. Defendant incorporates all arguments raised in its Notice of Removal (ECF No. 1).

I-3056463.1

The removal of civil actions from state court to federal court is controlled by 28 U.S.C. § 1446. While ordinarily all defendants must be completely diverse from the plaintiff to permit removal, a court should ignore any defendants that have been fraudulently joined. *See Johnson v. Am. Towers, LLC*, 781 F.3d 693, 704 (4th Cir. 2015) (citing *Mayes v. Rapoport*, 198 F.3d 457, 464 (4th Cir. 1999)). "[T]he Federal courts may and should take such action as will defeat attempts to wrongfully deprive parties entitled to sue in the federal courts of the protection of their rights in those tribunals." *Ala. Great S. Ry. Co. v. Thompson*, 200 U.S. 206, 218 (1906); *see also McKinney v. Bd. of Trs.*, 955 F.2d 924, 927 (4th Cir. 1992) ("[D]efendant's right to remove a case that could be heard in federal court is at least as important as the plaintiff's right to the forum of his choice.").

The doctrine of fraudulent joinder is one method that federal courts employ to ensure that diverse defendants are not deprived of their right to federal court. The word "fraudulent" is a term of art and does not necessarily reflect any nefarious intent. *See AIDS Counseling & Testing Ctrs. v. Group W Television, Inc.*, 903 F.2d 1000, 1003 (4th Cir. 1990). As such, this should be applied when "there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court[.]" *Mayes*, 198 F.3d. at 461 n.8 & 464; *see also Linnin v. Michielsens*, 372 F. Supp. 2d 811, 819 (E.D. Va. 2005) (noting that the "'no possibility' language … [means] that there is no reasonable basis for predicting liability on the claims alleged"). Joinder is also fraudulent when "there [is] no real intention to get a joint judgment, and … there [is] no colorable ground for so claiming." *AIDS Counseling*, 903 F.2d at 1003 (quoting *Lewis v. Time, Inc.*, 83 F.R.D. 455, 460 (E.D. Ca. 1979)). Thus, the fraudulent joinder analysis includes both the ability to state a claim, but also plaintiff's intention in obtaining a verdict against defendant. *Id.*

Plaintiff Nyeisha Ghee recently alerted the Court to *Skidmore v. Schinke*. *See* No. 3:25-cv-17 (ECF No. 59-1); *Skidmore v. Schinke*, No. 25-1436, 2026 U.S. App. LEXIS 9129 (4th Cir. Mar.

I-3056463.1

30, 2026). Although Plaintiff appears to feel this decision is significant on the remand question, it is not. **This Court is able to "predict with certainty … how a state court . . . would resolve these issues**." *Id.* These are <u>not</u> "thorny state-law questions," but rather firmly settled by Virginia law. *Id.* at \*7. The case law is too extensive to cite in full. Contrary to Plaintiffs' assertion, they are not "within the paint," nor do they even possess an unlikely "half-court shot," as the plaintiff in *Skidmore* did. At issue, the question is viability, not the probability of success, and Plaintiffs' claims lack viability under fundamental Virginia tort law. Consequently, these claims fail, and dismissal is not only warranted but required.

### III.    LEGAL ARGUMENT

**A.    PestNow Was Fraudulently Joined Because Plaintiff Cannot State a Claim Against a Third-Party Contractor for Nonfeasance Before Her Tenancy.**[2]

i.    <u>Plaintiff Fails to Understand the Source-of-Duty Rule, Which Dictates That PestNow Did Not Owe Her Any Common-Law Duties.</u>

In moving to remand, Plaintiffs look at the Source-of-Duty Rule ("SOD Rule") backwards, claiming that because *Ms. Ghee* did not contract with PestNow, there is no contract – ignoring the question of whether <u>PestNow's duty</u> originated from <u>its contract with Pinetree</u>. The SOD Rule distinguishes between whether the original duty owed arose from tort or contract law. *See Tingler v. Graystone Homes, Inc.*, 298 Va. 63 (2019); *Richmond Metro. Auth. v. McDevitt St. Bovis*, 256 Va. 553 (1998). <u>It does not matter whether a plaintiff is a party to the immediate contract with the defendant.</u> *See Cawlo v. Rose Hill Reserve Homeowners Ass'n*, 106 Va. Cir. 235, 240 (Fairfax County 2020) ("[W]hen a contract does not exist between two parties, and when no intended third-party beneficiary claim is pled, there cannot be recovery in tort for what is an act of nonfeasance.");

---

[2] Defendants incorporate arguments raised by PestNow in its Motion to Dismiss (ECF No. 6-7, 18) and its opposition to Plaintiffs' Motion to Remand, to the extent applicable to these arguments.

*Holderfield v. Thyssenkrupp Elevator Corp.*, No. 20-cv-01599, 2022 U.S. Dist. LEXIS 61088, *28-29 (E.D. Va. Mar. 20, 2022) (noting that the source of duty was the private agreement).

Plaintiffs' Complaint against PestNow is based on alleged *failures*, not affirmative wrongs. *See* Compl. ¶ 2 ("Defendant PestNow … failed to follow the instructions for applying termiticide and failed to stop the termite damage."); Compl. ¶ 52 (noting PestNow failed to follow the termiticide labels; failed to inspect the building's interior; and failed to drill holes). Plaintiffs support their failure-based argument by analogizing PestNow's alleged failures to a doctor's failure to diagnose an illness,[3] demonstrating their allegations are of nonfeasance. (ECF No. 15, at 11 n.6). Further, Plaintiffs focus on PestNow's actions from the 2019 termite treatment until the 2024 fire, but none of those alleged actions occurred at Building G, and so cannot constitute malfeasance. Because PestNow did not affirmatively cause Plaintiffs and/or their Decedent harm, PestNow must be dismissed.

Plaintiffs attempt to escape the SOD Rule by referencing *Kaltman v. All American Pest Control, Inc.*, 281 Va. 483 (2011). The *Kaltman* defendants contracted to provide services to the *Kaltman* plaintiffs, so there was no question of duty. *See id.* at 490 (noting defendants admitted contractual duty). The Court could then look at Virginia Code § 3.2-3939(B) for the standard of care. However, a statute does not create a duty. "[A] statute setting the *standard* of care does not create the *duty* of care. Instead, violating a statutory requirement supports a negligence claim only where there is a common-law cause of action. The absence of an underlying common-law duty renders the presence of a statutory standard of care irrelevant." *Murphy v. Coman*, No. 1248-24-4, 2025 Va. App. LEXIS 491, *7-8 (Sept. 2, 2025) (quotations omitted) (cleaned up); *see also*

---

[3] Ironically, even physicians, under a separate duty of care, are not automatically liable when they fail to diagnose an illness. *See Hadeed v. Medic-24, Ltd.*, 237 Va. 277 (1989).

I-3056463.1

*Steward v. Holland Family Props., LLC*, 284 Va. 282, 286 (2012) ("[A] statute setting the standard of care does not create the duty of care."). Without a duty, Section 3.2-3939(B) does not bridge the legal gap.

*Kaltman*'s holding that those defendants owed an additional, tort-based standard of care is in keeping the malfeasance-nonfeasance distinction and does not create a duty here. *See* 281 Va. at 493. In *Tingler* (the leading case on this distinction) the Supreme Court of Virginia discussed *Kaltman* as squaring with the doctrine: "The gist of the [*Kaltman*] case was clear: It was the contractor's affirmative act of using a dangerous pesticide, not the failure to use a safe pesticide, that mattered. . . . [T]he *Kaltman* holding squared well with the nonfeasance-misfeasance distinction[.]" 298 Va. at 85. Plaintiffs' alleged duty is the exact issue distinguished in *Kaltman* and *Tingler*: they allege that their damages stem from a failure to apply the pesticide broadly enough, not the termiticide itself. *See* Compl. ¶ 59 (alleging that "termites continued to destroy areas inside the wall"). Plaintiffs' argument about non-contracting parties like houseguests does not overcome this rule; while under *Kaltman*, those plaintiffs likely would have had a malfeasance-based claim from the pesticide itself, Plaintiff does not. PestNow's alleged misconduct was an omission, and *Kaltman* does not establish that PestNow owed Plaintiff a common-law duty.

Plaintiffs continue to insist that *RGR v. Settle* imposes a duty on PestNow, but *RGR* did not overturn Virginia's longstanding law on the malfeasance-nonfeasance distinction. 288 Va. 260 (2014). RGR asserts nothing more than that "general negligence principles require a person to exercise due care to avoid injuring others." *Id.* at 276. Defendants cannot affirmatively harm others, and the *RGR* plaintiff was harmed by RGR's affirmative act in stacking its lumbar to impede the right of way. *Id.* at 273. *Quisenberry v. Huntington Ingalls* similarly does not pertain to the SOD Rule, discussing ordinary negligence and imposing a duty because of Huntington

7

Ingalls' affirmative spreading of asbestos fibers within the zone of danger. 296 Va. 233, 245-46 (2018). These cases do not establish that *an omission* can form the basis of general negligence liability. Plaintiffs' allegations against PestNow are controlled under *Tingler* and must be dismissed.

   ii.    PestNow Did Not Assume a Tort Duty to Plaintiffs.

The Restatement (Second) of Torts § 324A requires both that the defendant have undertaken "to render services to another which he should recognize as necessary for the protection of a third person"[4] and that one of the following prongs is met: (1) the defendant's failure increased harm; (2) the defendant performed a duty owed by another; or (3) the harm stems from the plaintiff's reliance on the undertaking. Prong 1 is inapplicable because the alleged failures did not increase the risk but simply let the termite damage continue unabated. Prong 3 is inapplicable because PestNow never interacted with Ms. Ghee (either during the 2019 treatment to Building G or during the alleged post-2019 treatment to other buildings), and Ms. Ghee never relied on PestNow directly. Plaintiffs' assumption claim thus depends solely on Prong 2, under which Plaintiffs argue that PestNow assumed a landowner's "non-delegable duty to maintain its land in a safe condition[.]" (ECF No. 15, at 13). Plaintiffs' allegations do not support this assumption.

Virginia's adoption of § 324A requires that a defendant's assumption of duties be shown. In *A.H. v. Church of God in Christ, Inc.*, the Supreme Court of Virginia emphasized that "there must be a clear expression of intent by a defendant to take on a legal duty to protect a plaintiff who

---

[4] Plaintiff argues it is obvious that termite control would be necessary to protect Plaintiff from her alleged harm, but such is not obvious at all. Typical harm associated with termites is building collapse. *Cf. Garber v. Haddon Hills Assocs., LLC*, No. A-1659-1T2, 2012 N.J. Super. Unpub. LEXIS 2612, *13 (2012) ("Termite-damaged floors can collapse and negatively affect the structural integrity[.]"). Termite damage only allegedly created the fire risk because of the alleged pressure of the deteriorating wood on the Sliding Door's frame – the Compression Issue. It is not obvious that PestNow would know the Sliding Door would not open during a fire.

I-3056463.1

is justifiably relying upon that clearly expressed intent." 297 Va. 604, 624 (2019). Even cases like *Burns v. Gagon*, which Plaintiffs cite, only open the possibility for an implied assumption based on a communication of intent. *See* 283 Va. 657, 672 (2012) (noting the allegation that "Burns assumed a duty to investigate Diaz' report … because Burns told Diaz that he would 'alert security,' 'look into it,' and 'take care of it'"); *Kellermann v. McDonough*, 278 Va. 478, 489 (2009) (noting that the defendant "agreed and said 'don't worry, I promise we'll take good care of her'"); *Didato v. Strehler*, 262 Va. 617 (2001) (noting duty for physicians to test report results when plaintiffs asked). Plaintiffs' reliance on *Terry v. Irish Fleet, Inc.*, is also unpersuasive because *Terry* only discussed a duty to motorists based on signaling others to proceed, before rejecting the *Terry* plaintiff's request for an implied assumed duty. *See* 296 Va. 129, 138-141 (2018); *see* (ECF No. 15, at 12 n.9). No allegations in the Complaint represent a communication, either verbally or by conduct, that PestNow was assuming a landlord's common law duties to tenants.

Plaintiffs put the duty as "maintain[ing] the structural elements of [the] apartment complex in safe condition[.]" (ECF No. 15, at 13). PestNow declined this responsibility in its report. *See* (ECF No. 1-9, at 2) (noting it was "not a structural damage report" and that "hidden damage" could be present, which should be identified by a different contractor). The only role PestNow filled was termite treatment – and notably, only performing termite treatment at the direction of the Defendants. *See* Compl. ¶ 42. As Plaintiffs acknowledge in the Complaint, PestNow did not inspect the interior of buildings "unless it was already inside the unit for other pest control or if [Defendants] specifically asked it do so." *See* Compl. ¶ 47. Further, Pinetree Apartments retained responsibility for the structural components of apartments, including by hiring third-party contractors to assess the damage and repair Unit N1, which was compromised in the 2019 termite incident. *See* Compl. ¶¶ 50, 64. The other alleged termite treatment at Pinetree was only upon

9

request. *See* Compl. ¶¶ 55-58. PestNow's conduct does not demonstrate a systematic assumption of responsibility for eradicating and/or preventing termite damage continuously in all buildings.

The question presented here is whether the law can even recognize a duty owed by PestNow on the facts alleged – which is a question for a judge now, not a jury later. *Andrews v. Appalachian Power Co.* does not control because there was split legal authority as to whether "contracts between cities and utility providers" create duties solely to the city or also to the traveling public – and there is no legal split in this case under *Tingler*. 110 Va. Cir. 384, 386 (Lynchburg 2022). This case also does not involve a city's utility contracts. *See supra*. The reasoning in *Boland v. Rivanna Partners* is also inapposite because the snow-removal company had *not* assumed the landlord's duties: "Rivanna hired them to *perform* its non-delegable duty. They did not attempt to delegate their *legal duty* of proper maintenance[.]" 69 Va. Cir. 308, 311 (Charlottesville 2005). The *Boland* court then based the snow-removal company's alleged negligence on the company's own common-law duties to clear snow carefully, which duties for this specific activity had been established by other cases.[5] *See id.* Thus, the duties were not ones that had been delegated and assumed from the landlord, as Plaintiffs allege occurred here. *See* (ECF No. 12, at 13). There are no factual allegations that support submitting the question of assumption of duty to the jury.

    iii.    <u>Claims Against PestNow Are Fatally Speculative.</u>

---

[5] *Boland* cited numerous cases that snow-removal companies owe their own common-law duties to the public when clearing snow. There is no such strong case-law that pest control companies owe duties to the general public; in fact, <u>*Kaltman* is strong precedent that they do not</u>. *See supra.* There is also a question about whether *Boland* was accurately decided under the malfeasance-nonfeasance distinction. *See Pusey v. Riner*, 26 Va. Cir. 321 (Fairfax County 1992) (noting that the employment contract did not create a common law duty to clear the snow for the public).

In the Notice of Removal, Defendants argued that Plaintiffs' claims against PestNow were fatally speculative. *See* (ECF No. 1, at 15-18). Plaintiff's response fails to ground her claims beyond speculation. *See* (ECF No. 15, at 16-18). The fact that Subterranean Termites are "common" still leaves the identification of the exact species at issue speculative. *See* (ECF No. 1, at 16). Plaintiffs acknowledge that termites were never found in Unit G-8. (ECF No. 15, at 16-17). While Donisha Bugg and other Pinetree residents may claim termite sightings, Plaintiffs acknowledge that "termites are generally difficult to detect for non-experts[.]" *Id.* at 18. Notably, Ms. Bugg's sighting was sometime between 2017 and 2019 (at least three years before Ms. Ghee's tenancy) – and before Building G's 2019 treatment for termites and the negative recheck in 2020. *See* Compl. ¶¶ 52-53. Ms. Ghee acknowledges that she herself never reported termites in Unit G-8. (ECF No. 15, at 18); *see also* (ECF No. 1, at 18) (noting the removal of the allegation over subsequent pleadings). Any claims about termites in Unit G-8 are too speculative to stand.

**B.     Plaintiff Cannot State a Claim Against the Individual Employees for Malfeasance Based on Failure to Repair the Apartment.**

    i.     *Harris* Is One of Many Courts to Distinguish Between Malfeasance and Nonfeasance.

Contrary to Plaintiffs' assertion, *Harris v. Morrison*, 32 Va. Cir. 298 (Richmond 1993), is <u>not</u> the only Virginia case[6] to have distinguished between nonfeasance and malfeasance for

---

[6] The Fourth Circuit, applying Virginia law, has routinely applied this distinction to employees. *See, e.g.*, *Cortez v. Krispy Kreme Doughnut Corp.*, Civ. No. 15-cv-258, 2015 U.S. Dist. LEXIS 139381 (E.D. Va. Oct. 13, 2015) (denying motion to remand when claim against store manager was based on a failure to act); *Cruz v. Krispy Kreme Doughnut Corp.*, Civ. No. 15-cv-257, 2015 U.S. Dist. LEXIS 139380 (E.D. Va. Oct. 13, 2015) (same); *Berry v. SeaWorld Parks & Ent. LLC*, No. 14-cv-152, 2015 U.S. Dist. LEXIS 29900 (E.D. Va. Mar. 11, 2015) (denying motion to remand when plaintiff alleged employee failed to remedy the hazard); *Linnin v. Michielsens*, 372 F. Supp. 2d 811, 820-23 (E.D. Va. 2005) (denying motion to remand when employee mechanic allegedly failed to take a defective lift out of service and failed to warn the customer of the dangers); *Sayegh v. Raymond Corp.*, Civ. No. 15-cv-688, 2016 U.S. Dist. LEXIS 151586 (W.D. Va. Nov. 1, 2016) (denying motion to remand because employee was fraudulently joined on nonfeasance claim); *see also Orr v. Delhaize Am.*, No. 09-cv-527, 2010 U.S. Dist. LEXIS 161711 (E.D. Va. Feb. 19, 2010); *Holloway v. Petsmart, Inc.*, No. 10-cv-132, 2010 U.S. Dist. LEXIS 157600 (E.D. Va. July 15,

I-3056463.1

employees – countless others have held the same. *See, e.g.*, *Dixon v. S. Boston Corp.*, 69 Va. Cir. 313, 314 (Richmond 2005) ("[A]n employee of the owner or operator … may be held liable only for affirmative acts of negligence, not merely because . . . he or she is guilty of an omission." (*quoting Beaudoin v. Sites*, 886 F. Supp. 1300, 1303 (E.D. Va. 1995)). A cause of action will never accrue to a third party based only on duties an employee only owes the employer:

> "Though a third person suffers loss as a result of an agent failing to perform his duties to his principal, if that breach of duty to the principal is unaccompanied by any act or omission of the agent whereby a duty owing by him to the third party is breached, no cause of action accrues in favor of the latter against the agent." … [Defendant's] duty to be at his appointed place and perform his appointed tasks is a duty he owed to his employer, VDOT. It is not a duty owed to [Plaintiff].

*Slone v. Hickock*, 25 Va. Cir. 422, 424 (Botetourt County 1991) (quoting *Knight v. AH Coast Line*, 73 F.2d 76, 77 (5th Cir. 1934)). The same principle was discussed in *Schoonover's Administrator v. Terry*, when granting the defendants' demurrer:

> There is no allegation establishing anything more than that in the course of their duties owed Blue Cross/Blue Shield, Terry and Russell committed acts which plaintiff contends were improper. Nothing of which I am aware, nor of which I have been informed, imposes any duties to Schoonover by either of these people. Their duties were owed to Blue Cross/Blue Shield.

8 Va. Cir. 320, 321 (Richmond City 1987) (emphasizing that another holding would make "every employee" liable); *see also Pusey v. Riner*, 26 Va. Cir. 321, 325 (Fairfax County 1992) (finding the alleged duty stemmed from "their employment contracts; they did not owe any duty to Pusey

---

2010); *Walker v. Kroger Ltd. P'ship I*, No. 19-cv761, 2020 U.S. Dist. LEXIS 78433 (E.D. Va. May 2, 2020); *Krugylakv. Home Depot U.S.A., Inc.*, No. 22-cv-0024, 2023 U.S. Dist. LEXIS 151586 (W.D. Va. Mar. 28, 2023); *Beaudoin v. Sites*, 886 F. Supp. 1300 (E.D. Va. 1995); *Logan v. Boddie-Noell, Enterprises, Inc.*, 834 F. Supp. 2d 484, 488-93 (W.D. Va. 2011); *Saunders v. Boddie-Noell, Enterprises, Inc.*, No. 8-cv-110, 2008 U.S. Dist. LEXIS 48715 (W.D. Va. June 25, 2008); *cf. Metz v. McCarthy*, 167 F.4th 722 (4th Cir. Feb. 25, 2026). Nor is Plaintiff's argument that Federal Courts have only ever relied on *Harris* accurate. *See, e.g.*, *Beaudoin*, 886 F.Supp. at 1303 (quoting *Miller v. Quarles*, 242 Va. 343 (1991)); *Turner v. Carneal*, 156 Va. 889 (1931)); *Linnin*, 372 F. Supp. 2d at 821 (citing *Miller*, 242 Va. 343; *Turner*, 156 Va. 889; *Pusey v. Riner*, 26 Va. Cir. 321, 325 (Fairfax County 1992)).

12

with regard to the alleged wrongful conduct."). The agent must owe a duty *separate from* the duty owed the principal and that is *personally owed* the plaintiff to make the agent liable directly. *See, e.g.*, *Funch, Edye & Co. v. Gulf Smokeless Coal Co.*, 148 Va. 167, 175 (1927) ("The servant's mere omission of duty towards his master will not give the person a right of action, but omitting to perform a duty which he and his master owe to a third person may give a right of action."); *see also Morris v. Dame's Ex'r*, 161 Va. 545, 574 (1933) ("Although a defendant may have owed a duty to other persons to do an act, the omission of which resulted in injury to the plaintiff, yet if he did not owe that duty to the plaintiff, as to him the omission is not actionable negligence."). In making her assertion about *Harris*, Plaintiff must not have looked for other Virginia cases because there are too many cases to quantify in the limited space available. *See also supra* note 6.

The application of *Tingler v. Graystone Homes, Inc.*, and the malfeasance/nonfeasance distinction to employees is also supremely logical.[7] 298 Va. 63 (2019). Liability cannot arise "until it is established that the man who has been negligent owed some duty . . . Where no relationship exists, it is axiomatic that there is no duty." *Quisenberry v. Huntington Ingalls, Inc.*, 296 Va. 233, 243 (2018) (citations omitted). The Individual Employees had no relationship with Ms. Ghee and/or her children, and outside their employment, are strangers under the law. The only nexus between the Individual Employees and Ms. Ghee arises out of their contractual employment. Without employment, the Individual Employees are just Virginia residents that Plaintiffs have targeted to defeat diversity.

---

[7] Plaintiffs again reiterate that *Tingler* is irrelevant because "Plaintiffs were not a party to any contract with the Individual Defendants." (ECF No. 15, at 20 n.15). Again, Plaintiffs look at the SOD Rule backwards. The question is not whether *Plaintiffs* entered into a contract, but whether a defendant's alleged duty stems from a contract *to which the <u>defendant</u> is a party*. The employee nonfeasance-malfeasance distinction is a natural application of *Tingler* because the employee operates pursuant to an employment contract with his or her employer.

Nor is Virginia alone in following the nonfeasance-malfeasance distinction. This approach follows the common law and comports with general negligence principles. *See Bass v. Halliburton Oil Well Cementing Co.*, 131 F. Supp. 680, 681-82 (E.D. Okla. 1955) (noting that the "special relationship of master-servant or employer-employee" has no effect on the employee's duty, because the "basic test" was "whether the plaintiff has alleged ultimate facts which demonstrate the defendant employees breached a legal duty which they personally owed the plaintiff"); *Donaldson v. Tucson Gas, Electric Light & P. Co.*, 14 F. Supp. 246, 247 (D. Ariz. 1935) ("The weight of authority in the federal courts seems to be that the servant is not liable to third persons for nonfeasance or mere omissions in the employ of his master unless some duty on the part of the employee to the person injured is shown." (string citing cases)); *see also Chicago, R. I. & P. R. Co. v. Dowell*, 229 U.S. 102 (1913). One treatise defines the flow of duty:

> [N]o agent of a private individual or corporation is ever liable to third persons for the failure to perform obligations of his principal and which the principal has employed him to perform but which he has not contracted with them to perform in their favor. <u>In other words, he is not liable to them for his mere nonfeasance. He is consequently not responsible to them for any negligence in the performance of duties devolving on him purely from his agency</u> … [T]hese duties are not imposed on him by law, **nor has he agreed with anyone excepting his principal that he will perform them**. In failing to do so he wrongs no one except his principal, who alone, therefore, can hold him responsible for his negligence.

*Mallory S. S. Co. v. Garfield*, 10 F.2d 664, 667 (2d Cir. 1926) (quoting 2 Shearman & Redfield on Negligence, § 343) (emphasis added).

The Individual Employees were agents of South Oxford Management, which in turn provided contractual services to Pinetree Apartments, LLC. Virginia law establishes boundaries in protecting employees from personal suit for nonfeasance based on their employment. To state a claim, Plaintiffs must show a common-law duty *separate from* their employment, which they breached the duty *as to the Plaintiffs*, and not merely their employer. Plaintiffs' claims are replete with references to the Individual Employees' purported failures to repair her apartment, but devoid

14

of any affirmative acts that caused Plaintiffs' injuries. Plaintiffs' allegations that the Individual

Defendants failed to perform certain acts constitute unsustainable allegations of nonfeasance, and

they have been fraudulently joined to this matter to defeat diversity jurisdiction.

ii.       <u>Claims Against the Maintenance Employees Are for Nonfeasance for Failure to Repair.</u>

Plaintiffs' claims in the Complaint against the Maintenance Employees (either Ricky

McConnell or Alvin Peebles)[8] are for nonfeasance based on failure to repair. Plaintiffs allege that

the failure to repair permitted the alleged pre-existing natural condition of termites and/or water

infiltration to worsen. Plaintiffs frame their allegations perfectly as a nonfeasance claim:

- Maintenance Employees "painted over the visible termite damage, <u>but left untouched</u> the termite-damaged deteriorated wood framing[.]" Compl. ¶ 23 (emphasis added).

- "Any repair to the locking mechanism would have necessarily involved sliding the door …. [T]he sliding glass door <u>was not repaired</u>, but simply lubricated on its sliding track to temporarily permit movement." Compl. ¶ 25 (emphasis added).

- "After May 31, 2022, no work was done on the sliding glass door[.]" Compl. ¶ 26.

- "At all relevant times, the [Defendants] had the authority and obligation to prevent the water infiltration described above, to treat for termites, to repair the wood rot, and to ensure the sliding glass doors functioned properly." Compl. ¶ 31.

The crux of Plaintiffs' claims is that if the Maintenance Employees had repaired the Sliding Door

in 2022, Plaintiffs would not have been harmed – **not that the Maintenance Employees took any**

**action that increased the risk of harm**. *See Tingler*, 298 Va. at 84 (noting the "fundamental

difference … between lack of performance of something that would have prevented harm and

defective performance that caused harm[.]" (citing William L. Prosser & W. Page Keeton, Prosser

and Keeton on the Law of Torts § 92, at 657 (Dan B. Dobbs et al. eds., 5th ed. 1984)). Nothing

---

[8] Plaintiffs have pled in the alternative between Peebles and McConnell. *See* (ECF No. 15, at 21); *see also* (ECF No. 1, at 18-19) (explaining it was McConnell). However, because Plaintiffs' claims fail regardless of which employee did the alleged work, Defendants put that dispute aside for now and refer to both Peebles and McConnell with the collective "Maintenance Employees."

about painting the header above the Sliding Door attracted additional termites or accelerated deterioration; impeded function; or could conceivably have made function worse than it was.

Plaintiffs spend three sentences in their Motion trying to show that the Maintenance Employees' actions were malfeasance rather than nonfeasance – and in doing so, phrase the nonfeasance claim perfectly: "Filling in termite holes and painting over moisture … did nothing to eliminate the termites." (ECF No. 15, at 20). That is exactly Defendants' position, which is that failure to eliminate termites is a claim for nonfeasance, not malfeasance. *See Alier v. Gorbel, Inc.*, 115 Va. Cir. 295, 295-96 (Roanoke 2025) (rejected the plaintiff's argument that a crane inspector committed malfeasance because "by negligently inspecting the crane and affirmatively certifying it as safe, the alleged structural defects in the crane structure grew and worsened"). Even if the Maintenance Employees had acknowledged that the Sliding Door needed more than lubrication (which is denied), this would not transform the failure to repair into malfeasance:

> To create liability, the complaint would have to allege that McCarthy or the contractor performed *a positive act of negligence* while repairing the skylight. Yet, the complaint alleged only that the contractor inspected the skylight and acknowledged that it leaked and needed repair. Indeed, the complaint alleged that the skylight "remained unrepaired" as of the time when Metz slipped on the accumulation of water several months later.

*Metz v. McCarthy*, 167 F.4th 722 (4th Cir. 2025) (emphasis in original). Even acknowledging that repairs are necessary without conducting the repairs does not transform the claim into a positive act of negligence (a malfeasance claim). *See id.*

Plaintiffs assert, without argument, that the Defendants "did cause the alleged defect." (ECF No. 15, at 19). Nowhere does the Complaint allege that the Maintenance Employees caused the defect. The defect is the Compression Issue: "that there were termites, related water infiltration, and deteriorated wood inside the back wall …. which, in turn, interfered with the operation of the sliding glass door." Compl. ¶ 123. The Compression Issue was not human-made but the alleged

16

result of natural deterioration over time.[9] There is no allegation McConnell or Peebles ever entered Unit G-8 before May 2022. Plaintiff alleges that the Compression Issue pre-existed the Maintenance Employees' repairs. *See* Compl. ¶ 23. Plaintiff also alleges that no one repaired the Sliding Door after May 2022. *See* Compl. ¶ 26. Painting the header above the Sliding Door did not create the Compression Issue: the entire point of Plaintiffs' Complaint is that the Compression Issue allegedly already existed in May 2022 and that the Maintenance Employees should have repaired the issue. The aggregate of Plaintiffs' claim will never be more than a failure to repair.

Any claim for failure to repair refers to a duty that the Maintenance Employees owed their employer, not the tenant directly. *See Holderfield*, 2022 U.S. Dist. LEXIS 61088, at *28-29 (discussing private agreement for elevator maintenance). Any breach of duty to the tenant would be the employer's breach, and not the employee's breach, because only the employer owed the duty:

> Plaintiff alleges that the VA employee, as an employee of the United States, was negligent . . . The employer owes a duty of care to the plaintiff, but the employee, as the employer's agent, engages in the conduct that breaches the employer's duty. . . . As a result, because the employee's conduct is attributed to the employer, the employee does not owe an independent duty of care to maintain a safe premises and is not liable for the employer's negligence in failing to do so. . . . Put differently, . . . , only an owner or occupier of land owes the public a duty to secure the premises. . . . While the employee-agent may owe its employer-principal a duty to secure the premises, it owes no such legal duty to third parties.

---

[9] Even if Plaintiffs argue the defect was "human-made" because deterioration was inevitable (which is denied), any alleged flashing defect is not attributable to the Maintenance Employees, Yohannes, or the corporate Defendants. Pinetree was not the original owner but purchased the complex 16 years after construction. It is **unknown who installed the flashing**, and it is unknown whether there were prior repairs – including prior repairs to the Sliding Door in Unit G-8.

There is also no factual support showing that Unit G-8 had the alleged flashing issue. Plaintiffs' expert does not mention flashing. *See* Holland Aff. ¶ 17. Plaintiffs' Sliding Door was destroyed in the fire, and Unit G-8 was repaired without inspection of the flashing. *See* (ECF No. 1, at 9 n.5) (discussing Plaintiffs' counsel's failure to request preservation during post-fire inspections). The photographs in the Complaint are from the interior and do not show flashing. *See* Compl. ¶ 3.

I-3056463.1

*Jones v. United States*, No. 19-cv-6, 2021 U.S. Dist. LEXIS 62502 (D. Nev. Mar. 31, 2021) (quotations omitted). Similar to claims against PestNow, while Pinetree and/or South Oxford could have disciplined the Maintenance Employees for failure to fulfill their employment obligations, Plaintiffs do not have that common-law right. Their claim has only ever been plausible against the landowner for the alleged condition of Ms. Ghee's apartment. *See Steward*, 284 Va. 282.

In addition to the above cited cadre of cases supporting Defendants' position, two cases are particularly illustrative: *Beaudoin v. Sites* and *Saunders v. Boddie-Noell, Enters.* In *Beaudoin*, the plaintiff sued a grocery store's employees when she slipped on a plant vine left in the aisle. 886 F. Supp. at 1301. After concluding that there was no evidence the employees placed the plant with its vines touching the floor (only that placement made it possible for vines to end up on the floor), the court found that the only theory was based on the employees' failure to remove the plant vines – an act of nonfeasance with no possibility of prevailing under Virginia law. *Id.* at 1304-06. In *Saunders*, the plaintiff sued a restaurant's employees after bit into a hot dog that contained a foreign object. 2008 U.S. Dist. LEXIS 48715, at *1. Plaintiff alleged the employees failed to shield his food from contamination and served adulterated food in violation of health and safety regulations. *Id.* Although the employees affirmatively prepared and served the hot dog, *Saunders* held that there was no possibility of recovery because it was the employees' nonfeasance in failing to detect and remove the object that caused the injury, not serving the hot dog. *Id.* at * 2. Plaintiffs similarly bring claims against the Maintenance Employees for failure to shield from harm, failure to provide protection, and failure to prevent damage in Ms. Ghee's apartment – all nonfeasance claims that are unrecoverable under Virginia law.

iii.    The Claims Against Yohannes Are for Nonfeasance.

Plaintiffs' claim against Yohannes are the same as against the Maintenance Employees – that Yohannes should have had Unit G-8 repaired, which is a nonfeasance claim:

18

> Yohannes <u>had the authority and power</u> to ensure repairs were completed. Her submission of budgets <u>ignored needed repairs</u> and work plans . . . [T]hose efforts <u>failed to address</u> the wood rot and damage[.]

(ECF No. 15, at 27) (emphasis added to show that Plaintiffs couch allegations as failure to act).

Plaintiffs' bullet-point claims do not identify any *positive act* to Unit G-8. (ECF No. 15, at 25-28, & n.19). Any reference to Yohannes in the Complaint only alleges (or implies) a failure to repair:

- Yohannes was South Oxford's Regional Manager. Compl. ¶ 16.
- Yohannes received an email requesting a new termite inspection. Compl. ¶ 54.
- Yohannes was informed of a termite sighting in Unit C-8. Compl. ¶ 56.
- Yohannes was informed about needed repairs in Unit E-1. Compl. ¶ 88.
- Yohannes allegedly testified that Defendants "limited costly repairs."[10] Compl. ¶ 91 n.12.
- Yohannes was employed by South Oxford. Compl. Compl. ¶ 115(b).
- Yohannes had a conversation about Unit O-10 with Rob Glass. Compl. ¶ 119.
- Yohannes knew of "numerous resident complaints" and asked MBS to repair Unit D-3. *Id.*

As far as factual allegations, <u>that is it</u>. There are no allegations Yohannes acted regarding Unit G-8. Instead, Plaintiffs' claim that Yohannes was in a position and had the requisite knowledge to have "prevented harm" but failed to do so – classic nonfeasance. *Tingler*, 298 Va. at 84.

Plaintiffs' allegations against Yohannes, as the overseeing manager, were rejected in *Logan v. Boddie–Noell Enterprises*, in which the plaintiff sued a restaurant manager when she slipped on a watery substance of the floor. 834 F. Supp. 2d at 489. After noting there was no evidence the manager "herself spilled the watery substance," the court held that the failure to remove the snow, failure to clean the floor, and failure to place warning signs were "mere omissions" that could not be the basis for personal liability. *Id.* In this case, Plaintiffs' allegations against Yohannes are even weaker because Plaintiffs are attempting to defeat diversity by suggesting that Yohannes should be personally liable simply for being the manager. Such a claim is not permitted under Virginia law.

---

[10] This is disputed. Plaintiff relies on units *where repairs were made*. *See* (ECF No. 17, at 8).

I-3056463.1

Moreover, Plaintiffs' argument that Yohannes "had a duty to act" based on *Gumenick v. United States* ignores the pivotal question: **to whom would Yohannes as an *agent* have owed that duty?** *Gumenick* does not address that question, as it only contains a rather generic observation that the "appellants and their agents had full authority and the duty to make reasonable inspections of the premises and to make needed repairs," with absolutely no discussion about the source or object of the duty owed by the employee/agent. *Gumenick v. United States*, 213 Va. 510, 516 (1973) (stating the duty directly before as only "the duty of the appellants"). The answer is addressed above, by *Tingler* and the Virginia common law, showing that the employee's duties are to their employer, not the tenant. There is a critical difference between "the duty of *individual employees* of the owner or operator of the premises" and the "corporate manager in charge of the overall safety of the premises." *Milburn v. J.C. Penney Props.*, No. CL-2006-7068, 2007 Va. Cir. LEXIS 42, at *4 (Fairfax County 2007) (discussing *Beaudoin*, 886 F. Supp. at 1303) (emphasis in original). Absent her employment, Yohannes and Plaintiffs are strangers, and there is no common law duty. Opening the door to individual liability requires more than employment duties. Accordingly, because there is no possibility that Plaintiffs can state a claim against the Individual Defendants, the Individual Defendants were fraudulently joined, and the Court should dismiss them and deny the Motion to Remand. *See Mayes*, 198 F.3d. at 461 n.8 & 464.

C.   **Plaintiffs' Allegations of Fraud and/or Concealment Against the Individual Employees Does Not Transform Their Claims into Malfeasance.**

   i.   Plaintiffs Cannot State a Claim Against the Maintenance Employees for Fraud or Concealment Because Any Action Could Not Have Concealed the Alleged Defect.

Any argument that the Individual Employees' actions were malfeasance should be dismissed because it is impossible for a fraud claim to stand on the alleged facts. The defect is the Compression Issue: "namely, water damage and termites that were causing the wooden framing behind the drywall to deteriorate and deflect, thereby interfering with the operation of the sliding

20

glass door." *See, e.g.*, Compl. ¶ 131. The Compression Issue requires pressure on the Sliding Door's frame, <u>with resulting inability to open the Sliding Door</u>. *See id.* ¶ 104. It is not enough for Plaintiffs to show damage in May 2022 (which they cannot do), because if the damage did not impede the opening of the Sliding Door, there is no defect.

Plaintiffs' allegations do not support that the Sliding Door was inoperable when she assumed possession. Plaintiffs claim that the Maintenance Employees "greased the sliding glass doors to mask the out-of-square condition[.]" Compl. ¶ 119. By default, this allegation means the door moved – which is all that was legally required. Plaintiff compares these actions to the "temporary fix" of sending a football player back out with pain medication. (ECF No. 15, at 25). But apartment complexes do not have the duty of physicians. If a temporary fix repaired the issue in May 2022, then the apartment was safe when Plaintiff assumed tenancy. An apartment complex is not required to provide repairs that will never have future issues. *Cf. Thurman v. Falk*, 6 Va. Cir. 263, 266 (Petersburg 1985) (implying that landlords are not strictly liable for any condition that might develop in the future). Such a standard of care would be unworkable, because every apartment in the Commonwealth will develop future issues due to the ongoing deterioration of natural conditions. The deterioration of man-made structures is inevitable. Further, if the lubrication worked, and the Sliding Door opened, this supports that the Compression Issue (again, to the extent it existed) was not yet advanced in May 2022 to require replacement. Not every sliding door issue needs a full replacement, and Defendants were not obligated to provide the requested repairs until the Sliding Door did not open – which Ms. Ghee would have known at the same time as Defendants.

While this fact alone would be sufficient to dismiss the Complaint, Plaintiffs are incorrect that the argument is the only basis on which the Court must dismiss the fraud and concealment

I-3056463.1

claims. Plaintiffs' fraud and concealment claims are legally <u>impossible</u> under Virginia law because the Compression Issue – if it existed – would be impossible to conceal. No concealment can occur when Ms. Ghee could have discovered (and indeed, did discover) the alleged Compression Issue by simply attempting to open the Sliding Door. *See* Compl. ¶ 28. A layer of paint on a door's header, no matter how thickly applied, cannot conceal whether a door functions. It is simply impossible for paint to conceal the functionality of the Sliding Door – full stop. The Supreme Court of Virginia has disclaimed liability for **even affirmative misrepresentations** when the defect can be discovered by a cursory inspection:

> During their visits, Mr. Gill assured the Kuczmanskis the house was in excellent condition. He informed them that the house had storm windows throughout[.] . . . A short time after moving into the house … [t]he Kuczmanskis … noticed … that ten storm windows were missing. . . . [T]he missing windows were an open and obvious defect which could have been discovered by the Kuczmanskis by even a cursory inspection of the premises. . . . [T]he only misrepresentation attributable to Mr. Gill involved the storm windows. Under the doctrine of *caveat emptor*, the Kuczmanskis were not entitled to rely on this statement instead of ascertaining the true facts for themselves.

*Kuczmanski v. Gill*, 225 Va. 367, 369-71 (1983). Ms. Ghee could have discovered whether she could open the Sliding Door when she moved in, and at any time during tenancy, by taking the simple, logical, and eminently prudent step trying to open it. This is exactly like the plaintiffs in *Kuczmanski*. Ms. Ghee was legally obligated to check if the Sliding Door was operable, and was not permitted to rely on representations (particularly silent one) about the Sliding Door's operability:

> Where ordinary care and prudence are sufficient for full protection, it is the duty of the party to make use of them. Therefore, if false representations are made regarding matters of fact, and the means of knowledge are at hand and equally available to both parties, and the party, instead of resorting to them, sees fit to trust himself in the hands of one whose interest it is to mislead him, the law, in general, will leave him where he has been placed by his own imprudent confidence.

I-3056463.1

*Id.* at 369 (quoting citations omitted). As has been pithily stated, "The lessee's eyes are his bargain. He is bound to examine the premises he rents[.]" *Camechi v. A. T. Newell Realty Co.*, 181 F. Supp. 334, 338 (W.D. Pa. 1959). Plaintiffs' concealment and fraud claims are conclusively foreclosed under Virginia law because, regardless of any alleged *attempts* to conceal a fact, there is no claim if the fact *cannot be concealed*.

Plaintiffs argue that Ms. Ghee needed to understand "the systemic flashing problem, moisture issues, termite infestation, and/or wood rot throughout the complex" before she could understand that an inoperable Sliding Door posed a safety hazard. (ECF No. 15, at 25). Not only is this assertion unsupported by Virginia law, but it is ridiculous. The law in Virginia has only ever been that **a plaintiff needs to perceive the danger and hazard of a condition** – not the cause and origin. *See Freeman v. Case Corp.*, 118 F.3d 1011, 1014-15 (4th Cir. 1997) (noting that the "relevant question under Virginia law is not whether the defect itself … was obvious, but whether the hazard … was open and obvious"); *John Aragona Enters., Inc. v. Miller*, 213 Va. 298, 304 (1972) ("The canal and its steep bank constituted a danger which was open and obvious to anyone old enough to appreciate such a hazard."); *High v. Coleman*, 215 Va. 7, 8 (1974) ("The danger was open and obvious, and he was bound to have appreciated the existing hazard[.]"); *Runyon v. Geldner*, 237 Va. 460, 465 (1989) (stating homeowner do not need to warn of open and obvious hazards because the "obvious character of the condition relieves the homeowner of any duty they might otherwise have" (quoting *Tate v. Rice*, 227 Va. 341, 345 (1984)). This conforms with the common law. *See, e.g.*, *Camechi*, 181 F. Supp. at 337 (confirming that lessor was not liable under *caveat emptor* even though lessor was in the process of repairing the known issue when tenant moved in, and/or negligently failed to repair, because the lessee knew of the hazard); *Rashid v. McClymonds Bldg. Enters., Ltd.*, Nos. 2018CA00104, 2018CA00139, 2019 Ohio App. LEXIS

23

2916, at *9 (Ct. App. July 8, 2019) ("The rationale of the open and obvious doctrine is the open and obvious nature of the hazard itself serves as a warning[.]"). Ms. Ghee was required to take advantage of **any available facts** that were "sufficient to excite the suspicions of a reasonably prudent man" to further investigation, even when the facts available initially would not have been sufficient to ascertain the full extent of the alleged damage.[11] *See Poe v. Voss*, 196 Va. 821, 826 (1955) (finding it sufficient that plaintiff "knew there was something wrong with [the furnace] or its controls," even when the plaintiff did not know exactly what was wrong and he was verbally assured there was nothing critically wrong with the furnace). Ms. Ghee was capable, and never prevented, from understanding the common-sense danger posed by an inoperable Sliding Door.

The natural result of Plaintiffs' proposed argument is excessive and would eradicate the *caveat emptor* rule in Virginia. Home buyers and tenants rarely know the origin of a perceived problem with the property. In *Kuczmanski*, there is no discussion by the Court that the homebuyers needed to know *why* there were no storm windows – e.g., whether the storm windows had ever been installed, had been installed but later been removed, had been stolen by prior renters, etc. *Kuczmanski*, 225 Va. at 369-71. It was enough that they could perceive the windows were not there, in contradiction to the representation. *Id.* Further, there was no need for Ms. Ghee to understand what was going on *with other tenants* to understand the risk that she faced by an

---

[11] Plaintiffs make an equally inane argument that Ms. Ghee could not have conducted a personal inspection of the interior of the Sliding Door because she was prevented under the lease from tearing sheetrock off the wall. *See* (ECF No. 15, at 25). This argument is not necessary to resolve for the purposes of this Motion as it is legally inept – she did not need to know the condition of the interior, only the Sliding Door. Ms. Ghee could have tested the Sliding Door during her initial walk-through and refused the lease; she could have reported the Sliding Door on her Inventory and Condition Form (which she did not); and she could have requested repairs in writing. Further, the Virginia Residential and Landlord Tenant Act entitles a tenant to hire a contractor and recover repair costs if the landlord fails to correct a condition that "will constitute a fire hazard or serious threat to the life, health, or safety of occupants of the premises[.]" *See* Va. Code § 55.1-1244.1(B).

24

inoperable sliding door. She never tried to egress from the other tenants' sliding doors. The risks of an inoperable door in her own apartment were patently obvious, and Plaintiffs cannot state a fraud or concealment claim against the Maintenance Employees as a matter of law.

  ii.  Plaintiffs Fail to State a Claim Against Yohannes for Fraud or Concealment.

Plaintiffs base their fraud allegations against Yohannes only on her alleged knowledge and failure to act – nonfeasance at its finest. *See supra*. Plaintiffs entirely sidestep the requirement to show specific intent for the fraud, knowledge about Unit G-8 or the concealment, or any other facts that would make Yohannes supposedly "complicit" in the alleged fraud (which, again, is not even stated in the first instance).[12] *See Van Deusen v. Snead*, 247 Va. 324, 327-28 (1994).

*a.  Specific Intent is Required to Show Fraud by Concealment.*

Plaintiffs argue, without legal support, that they do not need to show specific intent to show fraud by concealment. Defendants briefed Plaintiffs' failure to state intent against Yohannes in their Motion to Dismiss – including the fact that fraud based on concealment requires specific intention. *See* (ECF No. 9, at 11-14; No. 19, at 6-10). Intention requires a "knowing and a deliberate decision not to disclose a material fact." *Norris v. Mitchell*, 255 Va. 235, 241 (1998); *Winn v. Aleda Constr. Co.*, 227 Va. 304, 308 (1984). "[U]nlike fraud for affirmative misrepresentations, concealment requires a showing of intent to conceal a material fact; reckless nondisclosure is not actionable." *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 827 (4th Cir. 1999) (citing *Norris*, 495 S.E.2d at 812). Plaintiffs must plead specific intent against Yohannes.

Plaintiff's only other argument on intent is that a "nursing home director who understaffs a ward may not always know who will be most affected, but the director recognizes that someone

---

[12] Plaintiffs cannot state a claim for reasonable reliance either. Tenants cannot rely on misstatements when they can easily find the truth for themselves. *See Kuczmanski*, 225 Va. at 370.

I-3056463.1

will be impacted nonetheless." (ECF No. 15, at 28). There is no citation to this little anecdote – and neither does this anecdote have anything to do with fraud. It is facially obvious that this is an anecdote about negligence (i.e., the failure to take due care), not to mention it underscores that the allegations against Yohannes are for nonfeasance. There is no specific intention shown.

### b. *Yohannes Lacked Notice That the Compression Issue Was Possible.*

It undisputed that Yohannes lacked knowledge about Maintenance Employees' repair work in Unit G-8 in May 2022. Yohannes also lacked notice of the alleged issue because she did not know the Compression Issue was possible – and other than an attempt to assassinate Yohannes's character, Plaintiffs fail to identify any facts that make it plausible. *See* (ECF No. 15, at 28) (attacking Yohannes's "honesty"). Plaintiff argues that Yohannes should have known because of "dozens of sliding glass door failures," *id.*, but Plaintiff's Complaint, which walks through her alleged evidence unit by unit, generally does not connect water intrusion issues with problems opening the doors, *see* Compl. ¶¶ 38-40, 64-88. Defendants pointed this out in their pending Motion to Dismiss, *see* (ECF No. 9, at 13), but Plaintiff's Opposition still failed to connect opening issues, and not merely leaking issues, to improperly installed flashing. In this Motion to Remand, Plaintiffs provided a bullet-point list of Yohannes's alleged knowledge – **but not a single bullet-point (of which there are 15) shows Yohannes knew that the alleged flashing issue might impede the operability of sliding doors.** *See* (ECF No. 15, at 25-26 n.19). Further, Plaintiff seems to think that "access" to information constitutes sufficient understanding for fraud – without any support for such a blatant overreach. *See* (ECF No. 15, at 27 n.20). The operability of a sliding door is an entirely different horse from mold and water intrusion. Plaintiffs assume that the louder they scream that Yohannes knew, the more believable it will sound – but the absence of factual support rendering it plausible speaks volumes more.

26

I-3056463.1

The Compression Issue also does not flow logically from a compromised wooden header. It is far more likely that the Sliding Door would experience water leaks through the loosened gaps. Unlike the Compression Issue, Plaintiffs' allegations support this because tenants complained about water intruding through gaps, and Plaintiffs even included a photograph of a tenant's attempt to seal the gaps. *See* Compl. ¶ 38(c). If gaps allowed flowing water, then headers did not compress the Sliding Door, because the alleged weight would have sealed gaps and stopped the water. Without notice, Plaintiffs cannot plausibly allege that Yohannes knew about the Compression Issue. (However, again, even if she knew about the issue, her failure to repair the Sliding Door would still be an inactionable claim for nonfeasance. *See supra.*) Yohannes must be dismissed from this lawsuit as fraudulently joined.

**D.      The Contemporaneous Documents Support Each of Defendants' Contentions.**

Plaintiffs argue that the contemporaneous documents do not support the allegation that the Sliding Door could move smoothly when Ms. Ghee moved in because Ms. Paschal noted the Sliding Door's issues on the initial inspection forms, but did not *contemporaneously* record her remembrance that "Maintenance was able to get the windows/doors to open smoothly while I was present by lubricating the seals." (ECF No. 15, at 23). However, the unit ultimately passed inspection! If a specific issue is observed, considered a safety issue, and not repaired, the unit would not have passed, but the fact that this unit did pass inspection means the issue was resolved. The very purpose of the PHRA review was to ensure that the unit was a "safe, habitable dwelling[]" that was "functionally adequate, operable, and free of health and safety hazards." *See* 24 C.F.R. § 5.703(a). Even without Ms. Paschal's recollection, the fact that the unit passed inspection (which is a contemporaneous document) shows that all parties believed the issue was sufficiently resolved. However, because the Sliding Door's operability could never have been concealed, and because

27

the Individual Employees' actions could never be considered anything other than nonfeasance, the Court does not need to resolve this issue to dismiss the Individual Employees from this lawsuit.

**E.      All Other Causes of Action Against the Individual Employees Are for Nonfeasance, Not Malfeasance.**

Plaintiffs address the other causes of action against the Individual Defendants collectively, asserting that the "Individual Defendants did owe a duty to maintain the inside of the back wall." (ECF No. 15, at 29). This argument is soundly rebutted above, as the Individual Defendants were legal strangers to Plaintiffs, had no property interest in the apartments, owed a duty only to their employer, and cannot be held liable for failure to protect the Plaintiffs. *See supra* Section B. There are no thorny issues of state law to wrestle with in Plaintiffs' Complaint – Plaintiffs' claims against the non-diverse defendants are thoroughly disposed of by controlling Virginia state law. *See Skidmore v. Schinke*, No. 25-1436, 2026 U.S. App. LEXIS 9129, at *7 (4th Cir. 2026). It is obvious from the face of the Complaint that Plaintiff cannot state a single cause of action against them, and they must be dismissed.

The Court should also keep Plaintiffs' Motion to Remand in context. Plaintiffs have sued Defendants for $80 million – which means they have not only sued the corporate entities for $80 million, *but the Individual Defendants*, who are low-level employees unlikely to have any hope of personally satisfying an $80,000 judgment, let alone $80 million. Even if the Plaintiffs could maintain a cause of action against the Individual Defendants, which is denied, there is no reasonable basis to conclude that Plaintiffs would recover from the corporate defendants and the Individual Defendants. Assuming arguendo that the Individual Defendants are found liable, logic and experience hold that the corporate defendants will ultimately pay any damages awarded to the Plaintiffs. As this Court highlighted in *Linnin*:

> Juries are loath to saddle a lowly employee with a joint and several judgment. Any experienced trial lawyer such as the plaintiff's attorney who actually desires a

judgment against a target defendant would never seek a joint judgment against a target defendant and a lowly employee for fear that the judgment amount would be reduced or negated out of sympathy for the employee. "Given the relative financial positions of most companies versus their employees, the only time an employee is going to be sued is when it serves a tactical legal purpose, like defeating diversity."

372 F. Supp. at 823-24 (quoting *Ayoub v. Baggett*, 820 F. Supp. 293, 300 (S.D. Tex. 1993)). In denying the plaintiff's motion to remand in *Orr v. Delhaize America, Inc. et al.*, the Court noted the two million dollar ad damnum as evidence that the plaintiff had "no real intention to get a joint judgment." *Orr*, No. 2:09-cv-527, at *5. In this case, Plaintiffs have no intention of seeking a judgment against the Individual Defendants. Further, to the extent that any Individual Employees' alleged actions are found wrongful, such would be imputed to their employer. Plaintiffs have nothing to gain by pursuing claims against the Individual Defendants except for defeating diversity. Instead, Plaintiffs' motive in adding the Individual Defendants is clearly "motivated solely out of a desire to defeat diversity jurisdiction." *Tye v. Costco Wholesale*, No. 2:05cv190, 2005 U.S. Dist. LEXIS 36990, *8 (E.D. Va. June 14, 2025). The Court should reject the Plaintiffs' clear attempt to avoid this Court's rightful jurisdiction and dismiss the non-diverse defendants.

## IV.    CONCLUSION

The Court should deny Plaintiffs' Motion to Remand because Defendants have demonstrated that the Plaintiffs cannot establish a viable cause of action against PestNow or the Individual Defendants for their purported omissions. PestNow and the Individual Defendants are defendants in this lawsuit for the sole purpose of defeating diversity. Thus, for the foregoing reasons, the reasons stated in prior briefing, and any reasons stated at any hearing, the Defendants respectfully request this Court DENY Plaintiffs' Motion to Remand, and order further relief as the Court deems appropriate.

29

I-3056463.1

**PINETREE APARTMENTS, LLC,
BEACHWOLD HOLDINGS, LLC,
BEACHWOLD RESIDENTIAL, LLC, SOUTH
OXFORD MANAGEMENT, LLC, NADRA
YOHANNES, RICKY MCCONNELL, and
ALVIN PEEBLES**

By: */s/ Joseph P. Moriarty*
    Joseph P. Moriarty (VSB No. 68465)
    Kevin M. Kennedy (VSB No. 75071)
    Bryn L. Clegg (VSB No. 96923)
    WILLCOX & SAVAGE, P.C.
    440 Monticello Avenue, Suite 2200
    Norfolk, Virginia 23510-2243
    Telephone: (757) 628-5500
    jmoriarty@wilsav.com
    kkennedy@wilsav.com
    bclegg@wilsav.com
    *Counsel for Pinetree Apartments, LLC,
    Beachwold Holdings, LLC, Beachwold
    Residential, LLC, South Oxford Management,
    LLC, Nadra Yohannes, Ricky McConnell, and
    Alvin Peebles*

30

I-3056463.1

## CERTIFICATION

I hereby certify that on this 6th day of April, 2026, I electronically filed the forgoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Charles H Cuthbert, Jr. (VSB No. 14519)
Richard M. Cuthbert (VSB No. 82025)
Cuthbert Law Offices, P.C.
220 North Sycamore Street
Petersburg, VA 23803-3228
Telephone: 804-733-3100
ccuthbert@cuthbertlaw.com
rcuthbert@cuthbertlaw.com
*Counsel for Plaintiff*

Mark J. Krudys (VSB No. 30718)
Daniel Guinnane Zemel (VSB No. 95073)
The Krudys Law Firm, PLC
Truist Place
919 East Main Street, Suite 2020
Richmond, VA 23219
Telephone: 804-774-7950
mkrudys@krudys.com
dzemel@krudys.com
*Counsel for Plaintiff*

Alexander Francuzenko (VSB No. 36510)
Philip C. Krone (VSB No. 87723)
Dunn Craig Francuzenko
3251 Blenheim Blvd., Suite 404
Fairfax, VA 22030
Telephone: 703-856-7480
alex@dunncraig.com
pkrone@dunncraig.com
*Counsel for PestNow of Central Va, LLC*

/s/ Joseph P. Moriarty
Joseph P. Moriarty (VSB No. 68465)
Kevin M. Kennedy (VSB No. 75071)
Bryn L. Clegg (VSB No. 96923)
WILLCOX & SAVAGE, P.C.
440 Monticello Avenue, Suite 2200
Norfolk, Virginia 23510-2243
Telephone: (757) 628-5500
jmoriarty@wilsav.com
kkennedy@wilsav.com
bclegg@wilsav.com
*Counsel for Pinetree Apartments, LLC, Beachwold Holdings, LLC, Beachwold Residential, LLC, South Oxford Management, LLC, Nadra Yohannes, Ricky McConnell, and Alvin Peebles*

31

I-3056463.1