IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| NYEISHA S. GHEE, *et al.*,<br>*Administrators of the Estate of Mark Khalil Ghee, Deceased*,<br>Plaintiffs,<br><br>v.<br><br>PINETREE APARTMENTS, LLC, *et al.*,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 3:26CV159 (RCY) |

**MEMORANDUM OPINION**

This is a wrongful death suit, removed from state court. Nyeisha S. Ghee ("Ms. Ghee") and Lisa Y. Campbell (together, "Plaintiffs"), administrators of the estate of Mark Khalil Ghee, deceased, allege against Defendants Pinetree Apartments, LLC ("Pinetree"), Beachwold Holdings, LLC, Beachwold Residential, LLC, South Oxford Management, LLC, Nadra Yohannes, Ricky McConnell, Alvin Peebles, and PestNow of Central Virginia, LLC ("PestNow") (collectively, "Defendants") a violation of Virginia Code § 59.1-200 (the Virginia Consumer Protection Act or "VCPA"), plus various fraud-based tort, negligence, and private nuisance claims. This matter is before the Court on Plaintiffs' Motion to Remand. The motion has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Motion to Remand will be GRANTED.

**I. RELEVANT PROCEDURAL HISTORY**

On February 2, 2026, Plaintiffs filed a civil action against Defendants in the Petersburg Circuit Court, alleging purely state-law-based claims. Compl. ¶¶ 151–59, ECF No. 1-2. Notably, Defendants Yohannes, McConnell, Peebles, and PestNow are—like Plaintiffs—Virginia citizens.

*Id.* ¶¶ 16–18. Notwithstanding the apparent lack of diversity (and the rule against home-state defendant removal), Defendants (minus PestNow)[1] timely removed the matter to this Court on February 27, 2026, contending that the non-diverse (i.e., Virginia-resident) Defendants were fraudulently joined. Not. Removal 10–28, ECF No. 1. On March 20, 2026, Plaintiffs timely filed a Motion to Remand, Mot. Remand, ECF No. 12, and an attendant Memorandum in Support, Mot. Remand Mem. Supp. ("Mem. Supp."), ECF No. 15. Defendants (again, minus PestNow) filed their Opposition in response thereto on April 6, 2026, Opp'n, ECF No. 22, and PestNow filed a Notice adopting and incorporating the same by reference on April 7, 2026, ECF No. 23. Plaintiffs filed a Reply to Defendants' Opposition on April 14, 2026, Reply, ECF No. 25.[2] The matter is therefore ripe for review.

## II. FACTUAL BACKGROUND[3]

This matter arises from an apartment fire at the Pinetree apartment complex on February 20, 2024, which resulted in the death of Mark Khalil Ghee. Compl. ¶ 1. On or around June 1, 2022, Ms. Ghee and her three sons, including Mark (together, the "Ghee Family"), moved into Pinetree apartment Unit G8. *Id.* ¶ 33. At the time, Pinetree partnered with the Petersburg Redevelopment and Housing Authority ("PRHA") to offer subsidized apartments to low-income

[1] PestNow nonetheless filed a Notice consenting to the other Defendants' removal. ECF No. 23.

[2] Plaintiffs separately filed a Reply to PestNow's Notice, arguing that PestNow's "consent to removal is not a substitute for a brief opposing remand" and that the "wholesale incorporation of [its] co-defendant's [sic] brief does not address the fraudulent joinder question as it applies to PestNow." Reply II at 1, ECF No. 24. Thus, in Plaintiffs' view, "PestNow has offered nothing to satisfy its burden, [and] the Motion to Remand should be granted as to PestNow on that basis alone." *Id.* The Court disagrees. The non-PestNow Defendants' Opposition squarely addresses whether PestNow was fraudulently joined, and the question is therefore properly before the Court. Accordingly, the Court considers the issue of fraudulent joinder on its merits.

[3] The Court's jurisdiction over this matter turns on whether Defendants Yohannes, McConnell, Peebles, and PestNow (collectively, the "Non-Diverse Defendants") were fraudulently joined for the purpose of defeating diversity jurisdiction. This inquiry, as explained in more detail *infra* subpart III(B), turns on whether Plaintiffs' claims against the Non-Diverse Defendants utterly lack merit. Because the Court finds that, at a minimum, Plaintiffs' negligence and negligence *per se* claims against PestNow satisfy the low threshold required under the fraudulent joinder analysis, the Court recites only those facts pertinent to that narrow issue (in addition to the general facts detailing the tragic event underlying this action); it need not address the facts and claims relevant to the other Non-Diverse Defendants.

tenants. *Id.* ¶ 19. Accordingly, its apartments, including unit G8, are inspected prior to occupancy. *Id.* ¶ 21. Unit G8 was inspected on May 24, 2022, and failed inspection "due to the sliding doors in the bedrooms and the window in the living room having severe chipping, paint, as well as them being hard to open." *Id.* Plaintiffs attribute the chipped paint to termite damage, citing, among other things, widespread termite issues throughout the Pinetree apartment complex. *Id.* ¶¶ 23, 36–41.[4] Pinetree responded to the failed inspection by painting the chipped wood and applying lubrication to the sliding door, so that it would function properly. *Id.* ¶¶ 23, 25. No further repairs were made, and unit G8 was subsequently approved for the Ghee Family's tenancy. *Id.* ¶¶ 26–27. Ms. Ghee was not made aware of the alleged painted-over termite damage, nor was she informed of the sliding door requiring lubrication to function. *Id.* ¶ 27. Ms. Ghee made one verbal request to have the door repaired sometime in late July 2023, but that request went unfulfilled. *Id.* ¶ 29.[5]

About seven months later, on February 20, 2024, the Ghee Family awoke in the middle of the night to find their apartment on fire. *Id.* ¶ 1. While two of Ms. Ghee's sons were able to escape out the front door, Ms. Ghee and Mark were in the primary bedroom and tried to escape through the sliding door therein—but to no avail, because the door would not open. *Id.* Amidst her efforts to open the door, Ms. Ghee lost sight of Mark. *Id.* She eventually escaped out the front door, but Mark did not make it. *Id.* His body was later recovered by firefighters, near the primary bedroom. *Id.*

About three months after the fire, Plaintiffs hired an expert to conduct a post-fire inspection, which revealed damaged wood in the wall at the back of primary bedroom. *Id.* ¶ 3.

---

[4] Plaintiffs' Complaint includes and relies on quotations from a PestNow corporate representative's statement in a deposition. Compl. ¶ 23, n.3 ("Indeed, at deposition, PestNow's corporate representative testified: 'A lot of times when termites enter the interior of a structure they will eat the wood' resulting in 'divots' or 'bubbling' of the paint. 'They'll eat the paper on the drywall, which will cause the paint to bubble or blister.'").

[5] Plaintiffs note that Ms. Ghee did not attempt to utilize the sliding door prior to the fire because she fears snakes, and there have been several snake sightings around her home. Compl. ¶ 29, n.5.

Plaintiffs posit that the door's inoperability stemmed from improperly installed flashing around the patio sliding glass door, which resulting in water accumulating inside the walls surrounding the sliding door—thus attracting termites. *Id.* ¶ 2. PestNow's alleged role in contributing to the inoperability of the sliding door stems from its provision of termite inspection and treatment services on behalf of Pinetree five years prior to the deadly fire, in or around April 2019:

> PestNow . . . appl[ied] termiticide only to the exterior of Building G without inspecting or treating the interior of Unit G8 and Building G's other units, [did] not apply[] termiticide at the joints of Building G's abutting concrete slabs, and . . . allow[ed] its technicians to apply termiticides at the perimeter of Building G even though they were not certified to apply termiticides.

*Id.* ¶ 6 (concluding, based on these allegations, that "PestNow knowingly skirted state law and the standard of care intended to protect the public"); *see also id.* ¶ 52 ("PestNow technicians treated the exterior perimeter of buildings B, C, G, J, K, O, and P on April 4-5, 2019. PestNow again failed to follow the termiticide label instructions by not inspecting the buildings' interiors when treating their exteriors, and by failing to drill holes in the abutting concrete slabs at the perimeter of each of these buildings.").

## III. STANDARD OF REVIEW

### A. Removal Based on Diversity of Citizenship

A case filed in state court may be removed to federal court if the federal district court has subject matter jurisdiction based on the existence of a federal question or diversity of citizenship. 28 U.S.C. §§ 1331, 1332, 1441(a). Courts "are obliged to construe removal jurisdiction strictly because of the 'significant federalism concerns' implicated." *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) (quoting *Mayes v. Rapoport*, 198 F.3d 457, 460 (4th Cir. 1999)).

Where, as here, subject matter jurisdiction is premised on diversity of citizenship, the removing party must demonstrate that the amount in controversy exceeds $75,000 and "*each* defendant is a citizen of a different State from *each* plaintiff." *Skidmore v. Schinke*, 171

F.4th 319, 321 (4th Cir. 2026) (emphasis in original) (quoting *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 378 (1978)). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

**B. Fraudulent Joinder**

The fraudulent joinder doctrine "permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Mayes*, 198 F.3d at 461. The removing party bears a "heavy burden" to establish fraudulent joinder. *Skidmore*, 171 F.4th at 321. Absent actual fraud in the pleading of jurisdictional facts, the defendant must establish that "there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Id.* at 321. In applying that standard, "all doubts about the propriety of removal should be resolved in favor of remanding the case to state court." *Id.* at 324. This is an exacting standard and is "even more favorable to the plaintiff" than the Rule 12(b)(6) standard. *Id.* Indeed, the Fourth Circuit recently emphasized that the distinction is even greater after *Twombly* and *Iqbal*. *Id.* at 324, n.5 (explaining that "if the fraudulent joinder standard was more plaintiff-friendly than the Rule 12(b)(6) standard at the time of *Hartley* [*v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999)—before the *Twombly* and *Iqbal* decisions], that's even more true today").

A court considering fraudulent joinder therefore should not "wrestle with thorny state-law questions" or "delv[e] too far into the merits." *Id.* at 324 (alteration in original) (quoting *Hartley*, 187 F.3d at 425). If the court "cannot predict with **certainty** how the state court would resolve a legal issue," it should leave that issue to the state court, with doubts concerning removal resolved in favor of remand. *Id.* (emphasis added) (cleaned up). Accordingly, the question is not whether the plaintiff is likely to prevail against the nondiverse defendant; even a claim that is "far from

airtight" requires remand if there remains a "possibility" that a state court would accept it. *Id.* at 325. As the Fourth Circuit recently put it: the plaintiff's claims against the defendant "might not be strong. It might even be the legal equivalent of a half-court shot. But as anybody who's watched enough basketball knows, half-court shots sometimes go in. Improbable? Yes. Impossible? No." *Id.*

## IV. ANALYSIS

Plaintiffs allege PestNow is liable for negligence and negligence *per se*. Compl. ¶¶ 151–59. Thus, to successfully demonstrate that PestNow is fraudulently joined, Defendants must show that there is no possibility that Plaintiff would be able to establish a negligence or negligence *per se* action against PestNow in state court.[6] The Court finds that Defendants fail to carry their burden, for the reasons articulated herein. Accordingly, the Court must remand this matter to state court.

### A. The Parties' Arguments

Plaintiffs' case against PestNow is based, in relevant part, on their theory that PestNow assumed Pinetree's duty "to exercise ordinary care and diligence to maintain in a reasonably safe condition areas over which [it] has control, namely, the interior of the bedroom wall surrounding the sliding glass door in [unit G-8]," when PestNow contracted with Pinetree to provide termite services to inspect and treat for termite damage. Mem. Supp. 12, n.8 (quoting *Gulf Reston, Inc. v. Rogers*, 207 S.E.2d 841, 844 (Va. 1974)); *see also* Restatement (Second) of Torts § 324A(b)

[6] Under Virginia law, "a plaintiff who seeks to establish actionable negligence must plead the existence of a legal duty, violation of that duty, and proximate causation which results in injury." *Kellermann v. McDonough*, 684 S.E.2d 786, 790 (Va. 2009) (cleaned up). Separately, the elements of negligence *per se* include the following:

> First, the plaintiff must prove that the defendant violated a statute enacted for public safety. Second, the plaintiff must belong to the class of persons for whose benefit the statute was enacted, and demonstrate that the harm that occurred was of the type against which the statute was designed to protect. Third, the statutory violation must be a proximate cause of plaintiff's injury.

*Kaltman v. All Am. Pest Control, Inc.*, 706 S.E.2d 864, 872 (Va. 2011) (cleaned up).

(articulating the assumption of duty rule).[7] Defendants contend that such claim is meritless on its face, arguing that: (1) PestNow owed only a contractual duty to Pinetree (and not Plaintiffs); (2) § 324A is inapplicable because Virginia requires any assumption of duty to be made explicitly, and Plaintiffs allege no such express assumption; and (3) even if PestNow owed Plaintiffs a duty, any claims against PestNow are impermissibly speculative. Defs.' Resp. Opp'n 5–11. Thus, in Defendants' view, Plaintiffs cannot possibly level a negligence-based claim against PestNow, meaning PestNow is fraudulently joined in an effort to defeat diversity jurisdiction. The Court disagrees.

**B. Plaintiffs Allege PestNow Owed them a Duty**

Under Virginia law, whether conduct arising from a contractual relationship supports tort liability turns on the source of the duty allegedly breached. *Tingler v. Graystone Homes, Inc.*, 834 S.E.2d 244, 254 (Va. 2019). Generally, a duty created solely by contract supports only a contract claim; tort liability may arise, however, where the defendant's affirmative conduct itself causes or exacerbates the harm, or where an independent source of law imposes a duty to act apart from the contract. *Id.* at 254–57. Thus, when the alleged wrong consists merely of failing to perform an obligation imposed by contract—nonfeasance—the contract ordinarily provides the only source of liability. *Id.* at 256–57. But where a defendant undertakes performance that affirmatively causes or worsens the harm—misfeasance—such conduct may support tort liability because the law independently imposes a duty to avoid affirmatively acting in a manner that causes injury to others. *Id.* at 256 (explaining that "[t]here is a fundamental difference between doing something that causes physical harm and failing to do something that would have prevented harm" (cleaned up)).

[7] Virginia formally adopted § 324A. *Burns v. Gagnon*, 727 S.E.2d 634, 644 (Va. 2012).

And even where the alleged wrong is properly characterized as nonfeasance, tort liability may still arise if some source independent of the contract separately imposes a duty to act. *Id.* at 254.

Here, the parties debate whether the alleged conduct is misfeasance or nonfeasance. Specifically, Plaintiffs argue the alleged breach is properly classified as misfeasance because PestNow affirmatively sprayed termiticide but failed to do so adequately. Reply 6–7. Conversely, Defendants contend it is nonfeasance—namely, a failure to act sufficiently to prevent harm by not applying the termiticide as broadly as required. Opp'n 7 (citing Compl. ¶ 59). Defendants' observation is most sound. As *Tingler* teaches, the assessment is not "a simplistic action-inaction test[.]" 834 S.E.2d at 257 (internal quotations and citations omitted). Rather, the Court must examine the nature of the harm—meaning the relevant question is whether the alleged harm stems from PestNow's affirmative conduct itself or, alternatively, from its failure to protect against harm. *See id.* at 256–57. Plaintiffs do not allege that PestNow's application of termiticide itself caused or worsened damage. Instead, they allege that PestNow failed to treat the premises adequately and thereby failed to prevent damage. Compl. ¶¶ 48–50, 152–54. The alleged wrong is therefore more properly characterized as nonfeasance.

But that characterization does not resolve the duty inquiry. It means only that PestNow's contractual promise, standing alone, cannot supply the tort duty for Plaintiffs' negligence claims. Plaintiffs, however, identify a source of duty independent of the contract. *See* Mem. Supp. 12–15. Specifically, Plaintiffs contend that PestNow assumed Pinetree's common law duty to "to exercise ordinary care and diligence to maintain in a reasonably safe condition areas over which [it] has control, namely, the interior of the bedroom wall surrounding the sliding glass door in [unit G-8]," when PestNow contracted with Pinetree to inspect for and treat for termite damage. *Id.* at 12, n.8

(quoting *Gulf Reston, Inc.*, 207 S.E.2d at 844); *see also* Restatement (Second) of Torts § 324A(b)).

Section 324A of the Second Restatement of Torts provides as follows:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) **he has undertaken to perform a duty owed by the other to the third person**, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (emphasis added).

With respect to subsection (b), the Virginia Supreme Court has recognized that the assumption of a duty not otherwise owed may be implicitly assumed through a defendant's conduct in the appropriate circumstances. *Terry v. Irish Fleet, Inc.*, 818 S.E.2d 788, 793 (Va. 2018) ("As a general proposition, a duty that does not otherwise exist may be impliedly assumed from the defendant's conduct.").[8] Although *Terry* did not address this precise factual setting, § 324A itself supplies support for Plaintiffs' theory that an undertaking to perform another's protective duty may create a duty to the persons whom that undertaking is intended to protect. One illustration is particularly instructive:

> The A Telephone Company employs B to inspect its telephone poles. B negligently inspects and approves a pole adjoining the public highway. Because of its defective condition the pole falls upon and injures a traveler upon the highway. B is subject to liability to the traveler.

Restatement (Second) of Torts § 324A cmt. d, ilus. 2. Plaintiffs' theory is analogous.

[8] In *Terry*, the Virginia Supreme Court observed how it previously "recognized that an assumed duty may be undertaken gratuitously by a motorist to another motorist or a pedestrian when he signals to the other motorist or pedestrian that it is safe to proceed." 818 S.E.2d at 793–94 (collecting cases). The Court nevertheless declined to extend that doctrine to the materially different context of an alleged assumption of duty to protect others from third-party criminal acts. *Id.* at 795. Thus, although *Terry* recognizes that conduct may give rise to an implied assumption of duty, it does not resolve the circumstances presented here. Neither party identifies binding authority squarely addressing whether a contractor like PestNow may impliedly assume a landlord's duty to maintain areas within the landlord's control in a reasonably safe condition by undertaking to inspect those areas for termites and provide treatment.

Plaintiffs allege PestNow, on Pinetree's behalf, undertook to inspect the apartments for termites and provide treatment where necessary. Like B's inspection of the telephone pole, PestNow's services were directed toward identifying and addressing a dangerous condition before it caused injury to third persons. And, as in that illustration, Plaintiffs do not allege that PestNow created the underlying danger; rather, they allege PestNow failed through its inspection and treatment to identify or adequately address an existing condition that later caused harm. The analogy therefore supports Plaintiffs' theory under § 324A(b). Just as B's undertaking to inspect the pole could give rise to liability to a traveler endangered by the defective condition not identified by said inspection, PestNow's undertaking to inspect and treat Pinetree's apartment could plausibly give rise to a duty to the tenants whom those services were intended to protect. Thus, the absence of an express undertaking made directly to Plaintiffs does not foreclose their negligence theory. Indeed, the undertaking itself provides at least a colorable basis for finding that PestNow assumed Pinetree's duty to Plaintiffs.

This conclusion is reinforced by persuasive Virginia state court precedent applying § 324A in analogous contexts. *See Andrews v. Appalachian Power Co.*, 110 Va. Cir. 384 (Lynchburg Cnty. Cir. Ct. 2022) (concluding that a utility company's undertaking to perform inspections on behalf of a city could support a duty to third persons foreseeably endangered by negligent performance); *Boland v. Rivanna Partners*, 69 Va. Cir. 308, 311–12 (Charlottesville Cnty. Cir. Ct. 2005) (recognizing a duty to third persons arising from a contractor's undertaking to perform snow-removal services for a property owner).[9]

[9] The Court notes that at least one court in this District has questioned the validity of *Boland* and declined to apply it on consideration of a motion to dismiss. *Holderfield v. Thyssenkrupp Elevator Corp.*, 2022 WL 980638, at *11 (E.D. Va. Mar. 30, 2022) (reasoning that *Boland* is undermined by the Virginia Supreme Court's later-issued *Tingler* opinion). The Court nonetheless cites *Boland* favorably here because the fraudulently joinder inquiry commands that "all issues of law and fact" be resolved in Plaintiffs' favor. *Skidmore*, 171 F.4th at 324; *cf. Moore v. PNC Bank, N.A.*, 2020 WL 3883252, at *9 (E.D. Va. July 9, 2020) ("And although PNC Bank cites to the Virginia Supreme Court's recent decision in *Young-Allen* to argue that Plaintiff cannot sustain a claim against White without alleging an ability to cure his default . . . because the 'no possibility' standard under the fraudulent joinder doctrine

Relying on those authorities, Plaintiffs contend that PestNow assumed Pinetree's duty to maintain the relevant areas of unit G-8 in a reasonably safe condition when it undertook to inspect it for and treat termites at Pinetree's apartments. Reply 8–10. Whether PestNow in fact assumed that duty—and, if so, the precise scope of the undertaking—may ultimately require a fact-specific inquiry. *Andrews*, 110 Va. Cir. at 386 ("Determining whether someone has assumed the legal duty of another and, if so, determining the scope of that assumed duty, is a fact-specific inquiry."). But fraudulent joinder does not require the Court to resolve that merits-intensive question now. Plaintiffs need only have a possibility of succeeding on their negligence theory. Because § 324A(b), its illustrations, and Virginia authority provide at least some support for Plaintiffs' asserted duty, the Court cannot conclude that there is no possibility a Virginia court would recognize the theory of duty advanced in Plaintiffs' negligence claims against PestNow. The Court therefore proceeds to the next disputed element: whether Plaintiffs plausibly allege that PestNow breached that duty.

**C. Plaintiffs Allege PestNow Breached its Duty**

Plaintiffs posit that PestNow breached its assumed duty in three ways: (1) failing to act as a reasonable person under the circumstances; (2) violating Virgina Code § 3.2-3932 by allowing a non-certified technician to apply termiticide; and (3) violating Virginia Code § 3.2-3939(B) by applying the termiticide inconsistent with its labeling. Compl. ¶¶ 49, 152–54. At least the latter theory provides a colorable basis for breach.

Section 3.2-3939(B) provides that "[i]t is unlawful for any person to use or cause to be used any pesticide in a manner inconsistent with its labeling or regulations of the Board, provided

requires the Court to resolve all inferences of law in Plaintiff's favor, the Court declines to find that *Young-Allen* overturned *Squire* without an explicit ruling to that effect."). Indeed, the *Andrews* opinion post-dates *Tingler* and maintains the application of § 324A in a similar context—further underscoring that there is at least some defensible legal basis for Plaintiffs' proposition.

that such deviation may include provisions set forth in Section 2(ee) of the Federal Insecticide, Fungicide and Rodenticide Act (7 U.S.C. § 136 et seq.)." Plaintiffs allege PestNow failed to apply the termiticide consistent with its labeling. Compl. ¶¶ 52, 152–53. Defendants do not dispute that Plaintiffs allege application inconsistent with the labeling; rather, they contend that § 3.2-3939(B) is "inapplicable because Plaintiffs' harm is alleged from the failure to apply termiticide broadly enough, not the act of spraying termiticide causing the harm." Opp'n 2.

The Court need not definitively resolve the scope of § 3.2-3939(B)'s standard of care or determine whether Plaintiffs ultimately fall within the class the statute was intended to protect, particularly where those questions turn on the proper construction of Virginia law. *See Dixon*, 369 F.3d at 816 ("We are obliged to construe removal jurisdiction strictly because of the significant federalism concerns implicated." (cleaned up)). At this stage, the question is only whether Plaintiffs' theory is one a Virginia court could accept. And although the parties dispute the statute's reach, its text expressly governs the use of "any pesticide in a manner inconsistent with its labeling," which certainly provides support for Plaintiffs' construction. Accordingly, Defendants fail to demonstrate that Plaintiffs have no possibility of establishing a breach of PestNow's assumed duty on that theory. The Court therefore proceeds to the final disputed elements—causation and foreseeability.

**D. Plaintiffs Allege Causation and Foreseeability**

Finally, Defendants argue that Plaintiffs' negligence claims against PestNow fail because they are too speculative, requiring inference upon inference to impose liability. Opp'n 11. There is force to that argument. Plaintiffs' causation theory is unquestionably a long shot: it depends on a series of inferences connecting PestNow's allegedly deficient termite inspection and treatment to the eventual deterioration of the wood surrounding the sliding door and its resulting inoperability roughly five years later, uninterrupted by any competing cause. But fraudulent

joinder does not ask whether the plaintiff's theory is strong, probable, or even likely to survive merits review. *See Skidmore*, 171 F.4th at 324–25. Instead, the Court must assess whether a Virginia court would certainly reject it. *Id.* at 324. As *Skidmore* cautions, a claim may be the legal equivalent of a "half-court shot"—improbable, perhaps, but not impossible. *Id.* at 325.

Plaintiffs' causation theory fits that description. Defendants may ultimately persuade a Virginia court that the asserted causal chain is too attenuated or speculative to support liability. But that is materially different from demonstrating that no Virginia court could accept the pleaded theory as a matter of law. Indeed, Defendants cite no case establishing that Plaintiffs' causation theory is inevitably doomed under Virginia law. Thus, on the present record, the Court cannot make that stronger finding. Accordingly, however long Plaintiffs' shot may be, the Court cannot say with certainty that it will miss. Remand is therefore required.

**V. CONCLUSION**

Because the Court finds that Plaintiffs state at least one viable claim against at least one non-diverse defendant, it must reject Defendants' fraudulent joinder theory, find that diversity jurisdiction is lacking, and grant Plaintiffs' Motion to Remand.

An appropriate Order shall issue.

/s/ RCY
Roderick C. Young
United States District Judge

Date: September 14, 2026
Richmond, Virginia